1997 ND 128

Stephen D. LITTLE and Kathryn
L. Dietz, Petitioners and
Appellees,

v.

J. Patrick TRAYNOR, Executive Director
of the North Dakota Workers Compen-
sation Bureau, and the North Dakota
Workers Compensation Bureau, Respon-
dents and Appellants.

Civil No. 960283.

Supreme Court of North Dakota.

June 27, 1997.

Dean J. Haas, of Dietz, Little & Haas, Bismarck, for petitioners and appellees.

Brent J. Edison (argued), Special Assistant Attorney General, and Tracy Vigness Kolb (appearance), Special Assistant Attorney General, Bismarck, for respondents and appellants.

SANDSTROM, Justice.

[¶ 1] The Workers Compensation Bureau appeals from a judgment invalidating its rulemaking action involving N.D.A.C. § 92–01–02–11.1, which sets a maximum claimant attorney fee rate and various fee caps, and limits reimbursement for a claimant's costs to $100 absent prior Bureau approval. The Bureau also appeals from an order awarding Stephen D. Little and Kathryn L. Dietz $450 in attorney fees. We conclude the Bureau's adoption of an $85–per–hour maximum hourly rate and various fee caps to compensate a claimant's attorney in N.D.A.C. § 92–01–02–ll.1(1) and (3)(b) through (i) was based on an adequate administrative rulemaking record and was not an arbitrary or capricious application of its statutory authority, and its adoption in N.D.A.C. § 92–01–02–11.1(9)(e) of a $100 limit for reimbursement of a claimant's reasonable and necessary costs, unless approved by the Bureau in advance of their accrual, was not beyond the scope of the Bureau's authority. We also conclude the district court did not abuse its discretion in awarding Little and Dietz attorney fees under N.D.C.C. § 28–32–21.1. We therefore reverse the judgment invalidating parts of N.D.A.C. § 92–01–02–11.1, and affirm the order awarding attorney fees.

I

[¶ 2] During the latter part of 1995, the Bureau conducted rulemaking proceedings under N.D.C.C. Chapter 28–32 to consider its proposed amendments to N.D.A.C. § 92–01–02–11.1 relating to payment of costs and attorney fees for claimants in workers compensation litigation. Little and Dietz, attorneys who represent numerous claimants before the Bureau, *see Little v. Tracy*, 497 N.W.2d 700, 702 (N.D.1993), appeared, along with others, at the public hearing and submitted written comments objecting to the proposed amendments.

[¶ 3] The new rules were promulgated and, on October 30, 1995, were found by the Attorney General to be in compliance with N.D.C.C. § 28–32–02. Effective January 1, 1996, the parts of N.D.A.C. § 92–01–02–11.1 at issue here provide:

"*Attorney fees.* Following an attempt to resolve a dispute through the worker adviser program, fees for legal services provided by employees' attorneys and legal assistants working under the direction of employees' attorneys will be paid when an order reducing or denying benefits is submitted to administrative hearing, district court, or supreme court and the employee prevails; when an order reducing or denying benefits is submitted to binding arbitration and the employee prevails; or when an informal decision reducing or denying benefits is submitted to binding dis-

pute resolution and the employee prevails subject to the following:

"1. Attorneys must be paid at the rate of eighty-five dollars per hour for all actual and reasonable time other than traveltime when the matter is submitted to formal administrative hearing, to binding arbitration, or to binding dispute resolution and the employee prevails. Traveltime must be paid at the rate of forty dollars per hour.

\* \* \* \* \* \*

"3. Total fees paid by the bureau for all legal services in connection with a claim may not exceed the following:

\* \* \* \* \* \*

"b. At a rate of eighty-five dollars per hour the sum of seven hundred dollars, plus reasonable costs incurred, for legal services in connection with an offer by the bureau to make a lump sum settlement pursuant to subsection 1 of North Dakota Century Code section 65–05–25.

"c. The total sum of one thousand eight hundred dollars, plus reasonable costs incurred, following issuance of an administrative order under North Dakota Century Code chapter 28–32 reducing or denying benefits, for services provided if the formal hearing request is resolved by settlement before the evidentiary hearing is held.

"d. The total sum of three thousand six hundred dollars, plus reasonable costs incurred, if the employee prevails after an evidentiary hearing is held.

"e. The total sum of four thousand dollars, plus reasonable costs incurred, if the employee's district court appeal is settled prior to submission of briefs. The total sum of five thousand five hundred dollars, plus reasonable costs incurred, if the employee prevails after hearing by the district court.

"f. The total sum of six thousand five hundred dollars, plus reasonable costs incurred, if the employee's North Dakota supreme court appeal is settled prior to hearing. The total sum of

seven thousand two hundred dollars, plus reasonable costs incurred, if the employee prevails after hearing by the supreme court.

"g. If the bureau has awarded benefits and the employer requests a rehearing, the bureau may, in its discretion, pay the employee's attorney fees and costs in connection with the rehearing. Total fees paid pursuant to this section may not exceed the sum of one thousand five hundred dollars.

"h. The total sum of six hundred dollars, plus reasonable costs incurred, for services in connection with binding arbitration, if the employee prevails, provided further that the fees may not exceed twenty percent of the amount awarded.

"i. The total sum of one thousand dollars, plus reasonable costs incurred, if the employee requests binding dispute resolution and prevails. The total sum of five hundred dollars plus reasonable costs incurred, if the employer requests binding dispute resolution and the employee prevails.

\* \* \* \* \* \*

"9. The following costs will be reimbursed:

\* \* \* \* \* \*

"e. Other reasonable and necessary costs, not to exceed one hundred dollars. Other costs in excess of one hundred dollars may be reimbursed only upon agreement, in advance, by the bureau. Costs for typing and clerical or office services will not be reimbursed."

[¶ 4] In January 1996, Little and Dietz appealed the Bureau's rulemaking action to district court. The Bureau moved for leave to pursue discovery and seek information about Little and Dietz's recovery of attorney fees from their clients' permanent partial impairment awards and their recovery of fees from their clients in instances where fees were not paid by the Bureau. Little and Dietz opposed the motion and requested an award of attorney fees under either

N.D.R.Civ.P. 11 or N.D.C.C. § 28–32–21.1(1) for having to respond to the motion. The Bureau then withdrew its motion, and the district court awarded Little and Dietz $450 in attorney fees.

[¶ 5] The district court ruled the Bureau had arbitrarily and capriciously applied the authority granted to it by N.D.C.C. § 65–02–08 in setting either "a reasonable maximum hourly rate" or the fee caps in the rule. The court found "no evidence at all that would support a determination that $85 is a reasonable maximum hourly rate or that the maximum fees are reasonable." The court invalidated those provisions and remanded the matter to the Bureau "so that it can adopt a reasonable maximum hourly rate and a maximum fee rate based upon an adequate record."

[¶ 6] The district court also held N.D.A.C. § 92–01–02–11.1(9)(e), requiring advance agreement by the Bureau to reimburse costs in excess of $100, was invalid. The court ruled, because there is no limiting language in N.D.C.C. § 65–02–08 that relates to costs, the Bureau acted beyond the scope of its statutory authority in enacting that provision.

[¶ 7] The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. §§ 27–05–06 and 28–32–15(2). The Bureau's appeal to this Court was timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28–32–21. This Court has jurisdiction under N.D. Const. Art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 28–32–21.

## II

[¶ 8] In an appeal from an administrative agency's rulemaking action, our standard of review is the same standard applied by the district court. See N.D.C.C. § 28–32–21. We must affirm the agency's rulemaking action unless the provisions of N.D.C.C. Chapter 28–32 have not been substantially complied with in the proceedings, the rule is unconstitutional on the face of the language adopted, the rule is beyond the scope of the agency's authority to adopt, or the rule is on the face of the language adopted an arbitrary or capricious application of authority granted

by statute. See N.D.C.C. § 28–32–19.1; *Tracy* at 702 n. 8.

### A

[¶ 9] The Legislature specifically directed the Bureau to "establish, by administrative rule, a reasonable maximum hourly rate and a maximum fee to compensate an injured employee's attorney for legal services following issuance of an administrative order under chapter 28–32 reducing or denying benefits." N.D.C.C. § 65–02–08. See also N.D.C.C. § 65–02–15 (directing the Bureau to "adopt rules to establish a maximum fee for an injured employee's attorney" when the employee prevails in an arbitration proceeding); N.D.C.C. § 65–10–03 (directing the Bureau to establish "a maximum fee to be paid in an appeal" when the employee prevails). Under N.D.C.C. § 65–02–08, attorney fees are to be paid only when the employee prevails, and "[e]xcept for an initial determination of compensability, an attorney's fee may not exceed twenty percent of the amount awarded, subject to a maximum fee set by administrative rule." The statute further provides it "does not prevent an injured employee or an employer from hiring or paying an attorney; however, the employee's attorney may not seek or obtain costs or attorney's fees from both the bureau and the employee relative to the same services." N.D.C.C. § 65–02–08. The Bureau promulgated N.D.A.C. § 92–01–02–11.1 in an effort to comply with the legislative mandate.

[¶ 10] The Bureau asserts its promulgation of the maximum hourly rate and fee caps in N.D.A.C. § 92–01–02–11.1(1) and (3)(b) through (i) was not, under N.D.C.C. § 28–32–19.1(4), "an arbitrary or capricious application of authority granted by" N.D.C.C. § 65–02–08. The district court ruled the Bureau arbitrarily and capriciously applied its statutory authority "[b]ecause the record does not support the determination" an $85 maximum hourly rate or the fee caps are reasonable.

[¶ 11] The Administrative Agencies Practice Act, in N.D.C.C. § 28–32–19.1, limits the district court's review of a rulemaking proceeding, as well as this Court's review, N.D.C.C. § 28–32–21, to "the record filed

with the court." The Act, however, is vague about what must be included in an agency's rulemaking record to support adopting an administrative rule.

> "The agency shall adopt a procedure whereby all interested persons are afforded reasonable opportunity to submit data, views, or arguments, orally or in writing, concerning the proposed rule, including data respecting the impact of the proposed rule. In case of substantive rules, the agency shall conduct an oral hearing. The agency shall consider fully all written and oral submissions respecting a proposed rule prior to the adoption, amendment, or repeal of any rule not of an emergency nature. The agency shall make a written record of its consideration of all written and oral submissions contained in the rulemaking record respecting a proposed rule."

N.D.C.C. § 28–32–02(3). *Compare* 5 U.S.C. §§ 556 and 557 (describing contents of record under the Federal Administrative Procedure Act); Uniform Law Commissioners' Model State Administrative Procedure Act (1981) § 3–112, 15 U.L.A. 7, 49–50 (1990) (describing contents of agency rulemaking record). *See also* A. Bonfield, *State Administrative Rule Making* § 6.12 (1986). Before analyzing the adequacy of the rulemaking record in this case, we first point out the role an administrative agency plays when it adopts rules.

#### B

[¶ 12] When an administrative agency adopts rules under the Act, it is acting in a quasi-legislative, not a quasi-judicial, capacity. *See Colo. Ground Water v. Eagle Peak Farms,* 919 P.2d 212, 216 (Colo.1996). The importance of this distinction is stressed in I K. Davis & R. Pierce, *Administrative Law Treatise* § 7.5, at p. 322 (3d ed. 1994) (Davis & Pierce):

> "To appreciate the significance of the controversy concerning the extent to which courts should require agencies to support the factual predicates of rules requires recognition of the nature of the factual disputes that dominate rulemaking proceedings. In promulgating a rule, an agency rarely is required to resolve a dispute concerning an adjudicative fact. Adjudicative facts are the kind of specific historic facts that are resolved by a jury in a judicial trial—who, what, where, when, and why. Disputes concerning the factual predicates of rules almost invariably concern legislative facts. Legislative facts are the general facts on which all legal institutions—legislatures, courts, and agencies—predicate rules of law.... Legislatures and courts are not required to provide *any* evidentiary support for the facts on which they predicate rules of law. Courts often require agencies to provide some evidentiary support for the legislative facts that provide the predicate for agency rules, but courts should recognize that legislative facts are not susceptible to the kind of evidentiary proof routinely required to support findings of adjudicative facts."

(Emphasis in original).

[¶ 13] Many courts have adhered to the philosophy that, because rulemaking is more often policy oriented rather than adjudicatory in nature, the record upon which it is based need not be as complete as in the adjudicatory situation where traditional factfinding is required. *See, e.g., Vermont Yankee Nuclear Power Corporation v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 547–548, 98 S.Ct. 1197, 1213–1214, 55 L.Ed.2d 460 (1978); *Hiatt Grain & Feed, Inc. v. Bergland,* 446 F.Supp. 457, 479 (D.Kan.1978) *aff'd,* 602 F.2d 929 (10th Cir. 1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1019, 62 L.Ed.2d 755 (1980); *City of Aurora v. Public Utilities Com'n,* 785 P.2d 1280, 1287 (Colo.1990). Some courts have ruled, however, there must be evidentiary support for a factual premise upon which a rule is based, or for a factual ingredient of the regulation. *See Citizens for Free Enterprise v. Dept. of Rev.,* 649 P.2d 1054, 1061 (Colo. 1982); *Anheuser–Busch, Inc. v. Dept. of Business,* 393 So.2d 1177, 1182 (Fla.Ct.App. 1981). As the court said in *Mammenga v. Dept. of Human Services,* 442 N.W.2d 786, 791 (Minn.1989), "[t]he rulemaking record varies with the nature of the rule; in some cases a substantial evidentiary record may be needed, ... while in other cases, 'common knowledge' or 'common sense' will suffice."

[¶ 14] Thus, courts in these jurisdictions reason, because agency determinations vary in range and nature, judicial review of a record in an administrative rulemaking proceeding must be appropriately tailored depending on whether the determination is predominantly policy-oriented or factual in nature. *See Eagle Peak Farms; Citizens for Free Enterprise.* At one extreme, if the necessity for a rule turns on a discreet fact that is capable of demonstrative proof, the record must contain specific factual support for the agency's determination. *See Eagle Peak Farms; Citizens for Free Enterprise.* At the other extreme, if the rule reflects policy judgments of a generic character that cannot really be "proven" by evidence in an adjudicatory sense, specific factual support is not required. *See F.C.C. v. National Citizens Com. for Broadcasting,* 436 U.S. 775, 813–814, 98 S.Ct. 2096, 2121, 56 L.Ed.2d 697 (1978) (where "factual determinations" were primarily of a judgmental or predictive nature, "complete factual support in the record for the Commission's judgment or prediction is not possible or required"); *National Oilseed Processors Ass'n v. Browner,* 924 F.Supp. 1193, 1206 (D.D.C.1996) (all essential postulates for an agency rule need not be contained in the record); *City of Aurora* ("When an administrative agency adopts a rule based on a policy judgment, particularly within the expertise of the agency, and not involving controverted questions of critical fact, it is not incumbent on the agency to present evidence in support of the proposed rule"); I Davis & Pierce, at pp. 327–328 (criticizing federal court decision reversing for inadequate factual support HEW rule setting $2,250 as resource limitation because "[n]o one could possibly prove with evidence that the figure should be precisely $2,250"). Of course, agency determinations in rulemaking proceedings most often are based on a combination of policy considerations and factual determinations, creating the "problem area" where "facts and policy thinking are mixed together in such a way that the factual ingredient of the rules is hard to identify." I K. Davis, *Administrative Law Treatise* § 6.13, at p. 510 (2d ed. 1978).

[¶ 15] In these jurisdictions, adjudicatory concepts of evidentiary proof have been interjected into the realm of non-judicial rulemaking by the administrative procedure statutes governing rulemaking. For example, the Federal Administrative Procedure Act expressly places upon the proponent of a rule the "burden of proof" and requires the rule be "supported by and in accordance with the reliable, probative, and substantial evidence." 5 U.S.C. § 556(d). *See also* Colo.Rev.Stat. §§ 24–4–103(4)(a) (rules must be based on record consisting of "evidence, exhibits, and other matters presented or considered . . .") and 24–4–106(7) (court may set aside agency action if it is "unsupported by substantial evidence when the record is considered as a whole . . ."), Fla.Stat. Ch. 120.58(1)(a)(1) (in rulemaking proceedings, "[i]rrelevant, immaterial, or unduly repetitious evidence shall be excluded, but all other evidence of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs shall be admissible . . .") and 120.68(10) (court may set aside agency action "if it finds that the agency's action depends on any finding of fact that is not supported by competent substantial evidence in the record"); Minn.Stat. Ann. § 14.14(2) (requiring agency at public hearing to "make an affirmative presentation of facts establishing the need for and reasonableness of the proposed rule . . .") and (2)(a) (allowing during hearing the agency and interested persons to present "written and oral evidence").

[¶ 16] The Administrative Agencies Practice Act contains no provisions incorporating adjudicatory agency functions into agency rulemaking actions. Rather, the district court incorporated adjudicatory concepts into this rulemaking action by finding "no evidence at all" to support the maximum hourly rate and fee caps and remanding for a redetermination "based upon an adequate record." Absent legislative authorization, we will not apply concepts of evidentiary proof suitable in an adjudicatory setting to an agency's rulemaking action. *Compare Mini Mart, Inc. v. City of Minot,* 347 N.W.2d 131, 137 (N.D.1984) (record of city council proceedings did not require transcribed and sworn testimony).

[¶ 17] Under N.D.C.C. § 28–32–19.1(4), we are directed to decide whether the Bureau's rule on maximum hourly rates and fee caps is an arbitrary or capricious application of authority granted by statute. This standard of review comports with judicial review of other non-judicial decisionmaking which is, under the separation of powers, limited to whether the decision is arbitrary, capricious, or unreasonable. *See, e.g., City of Fargo v. Ness,* 529 N.W.2d 572, 576 (N.D. 1995); *Burleigh Water Resource Dist. v. Burleigh County,* 510 N.W.2d 624, 627 (N.D. 1994); *Shaw v. Burleigh County,* 286 N.W.2d 792, 797 (N.D.1979). In those cases, the record is adequate if it enables us to discern the rationale for the decision. *See Ennis v. Williams County Bd. of Com'rs,* 493 N.W.2d 675, 679 (N.D.1992); *Pic v. City of Grafton,* 460 N.W.2d 706, 709–710 (N.D.1990). A decision is arbitrary, capricious, or unreasonable if it is not the product of a rational mental process. *See Ames v. Rose Tp. Bd. of Tp. Super'rs,* 502 N.W.2d 845, 851 (N.D.1993).

[¶ 18] We review the adequacy of the rulemaking record in this case with the foregoing concepts in mind.

### C

[¶ 19] The rulemaking record includes a partial transcript of the public hearing relating to Little and Dietz's objections to the rules, as well as the written comments of those who objected. Little wrote the rate for "contingent legal work is unreasonable" and argued "[c]laimant's attorneys, whose fee is contingent on prevailing and who generally are more experienced than the Bureau's retained counsel, are entitled to an increased hourly rate." Attorney Dean J. Haas, who works with Little and Dietz, wrote and argued the "insufficiency of fees paid to an employee's attorney is evidenced by the fact that defense counsel are paid the same hourly rate, but on a *non-contingent* basis, with no fee caps." (Emphasis in original). Haas argued a "fee contingent upon recovery is reasonable, so long as the overall level of compensation is sufficient to compensate attorneys who represent injured workers over the long haul." Haas proposed, because fees are paid only when an injured worker pre-

vails, "the statutory cap on fees at 20% of the recovery should be the fee, unless the recovery thereby resulting is clearly excessive." In the alternative, Haas proposed "to raise the hourly rate to $120.00, and raise the maximum fee caps by $1000 per level of proceeding." Haas argued the increase was "necessary to ensure that employees can continue to receive adequate representation."

[¶ 20] The record contains a table of worker compensation attorney fees provisions for each state, and a summary of that compilation. The summary notes 30 states pay attorney fees only if the claimant prevails on a dispute and 27 states pay attorney fees directly from a percentage out of the claimant's award. The summary points out 31 states have implemented a cap on attorney fees ranging from 15 percent to 30 percent of the actual award, with the majority of those states setting the cap at 20 percent. The summary also notes one state has a monetary cap in addition to a percentage cap on attorney fees and two states have monetary caps alone. The record also contains two letters of intent from North Dakota law firms to represent the Bureau in litigation at the rate of $85 per hour.

[¶ 21] The record includes the notice of public hearing, copies of the proposed rule, the regulatory analysis required by N.D.C.C. § 28–32–02.2, the Bureau's written "consideration of comments received" on the proposed rule, and the Attorney General's letter approving the legality of the rule as required by N.D.C.C. § 28–32–02(7). The four-page written consideration of comments explains the Bureau's basis for rejecting complaints the $85-per-hour maximum hourly rate and the fee caps are unreasonable.

> "The Bureau, in further review of the rule, has determined that the hourly rate paid to attorneys should be the same regardless of the type of proceeding.
>
> \* \* \* \* \* \*
>
> "The [B]ureau believes the $85 an hour fee is reasonable compensation for work in these cases. The [B]ureau has greater control over the amount spent for the contracted attorneys and greater control over the number of cases they handle. Allowing payment of fees only in cases in which

the injured worker prevails, is intended to result in pre-screening of cases to determine whether the case has merit.

\* \* \* \* \* \*

"Tiering of the fee schedule acknowledges that attorney time needed for different phases of litigation varies. Tiering of the fee schedule does not serve to reduce the caps. In fact, the rule proposes to add two more tiers to the district court and supreme court levels to acknowledge that appeals that are not heard before the court due to settlement, may require the attorney to spend additional time negotiating a settlement and, as a result, additional fee payment is appropriate."

During the hearing, a Bureau representative, in explaining its rationale for the various caps, said "we're just trying to make the caps correspond a little more to the expected amount of work that should be necessary in that case."

[¶ 22] We believe the record is adequate to support the Bureau's adoption of the $85–per–hour maximum hourly rate and the fee caps. The Legislature, by enacting the 20 percent fee cap and directing the Bureau to set a maximum hourly rate and other fee caps, has made its legislative intention crystal clear. The Legislature was seeking to control costs within the workers compensation system and reduce unwarranted litigation. The Bureau, exercising a policy judgment consistent with the legislative mandate, decided to pay prevailing claimants' attorneys the same hourly rate it pays its retained attorneys. The Bureau arrived at the other fee caps by estimating, through its experience and expertise, the amount of work involved at the various levels of the proceedings. An administrative agency's experience and expertise can be given deference when it is performing its rulemaking function just as it can when it is performing its adjudicatory function. *See, e.g., Dioguardi v. Superior Court,* 184 Ariz. 414, 909 P.2d 481, 484 (Ct. App.1995); *Citizens for Free Enterprise,* 649 P.2d at 1063; *Viking Pump v. State Emp. Appeal Bd.,* 522 N.W.2d 310, 312 (Iowa.Ct. App.1994); *Tennessee Cable TV Ass'n v. Public Serv. Com'n,* 844 S.W.2d 151, 168 (Tenn.Ct.App.1992). *Cf. Americana Health-*

*care Center v. Dep't of Human Services,* 540 N.W.2d 151, 153 (N.D.1995) (agency has reasonable range of informed discretion in the interpretation and application of its rules, and its expertise is entitled to deference when the subject matter is complex or technical).

[¶ 23] The Bureau considered Little and Dietz's arguments about the unfairness of compensating claimants' attorneys at the same rate as the Bureau's attorneys when the Bureau's attorneys are paid whether they win or lose. But the Bureau answered this argument by pointing out it could exercise control over the hours billed by its attorneys and stating its belief the rate and caps would result in better screening of the merits of a case by claimants' attorneys. This too, fully comports with the Legislature's intentions. *See Miller v. IBM,* 163 Vt. 396, 659 A.2d 1126, 1128 (1995) (attorney fee cap was "reasonably related to the purpose of avoiding 'unnecessary expense in the enforcement or defense' of claims").

[¶ 24] The arguments Little and Dietz make on appeal are perhaps valid criticisms of the attorney fee payment scheme, but they are virtually the same arguments made to and rejected by the Bureau in the rulemaking proceeding. It is not the function of this Court to decide whether the $85 hourly rate and the fee caps are reasonable; rather, we decide only whether the rule itself is an arbitrary and capricious application of statutory authority. *See* N.D.C.C. § 28–32–19.1(4). *Cf. Johnson v. N.D. Workers Comp. Bureau,* 428 N.W.2d 514, 517 (N.D.1988) (court declined to formulate "reasonable" rate of reimbursement for medically related travel expenses because to do so would "usurp the function of the legislative branch").

[¶ 25] The fact an agency exercises its discretion in a manner contrary to that advocated by the objectors does not mean the agency action was not based on the record. *See City of Aurora.* We do not determine whether the agency's regulation reflects the best or most preferable policy choice, but only whether there are reasonable facts and analysis which support the choice the agency

made. *See Liberty Homes, Inc. v. Dept. of Industry,* 136 Wis.2d 368, 401 N.W.2d 805, 812 (1987). On this record, we cannot say the $85–per–hour maximum rate or the fee caps are arbitrary, capricious or unrelated to the legislative directive.

[¶ 26] As Little and Dietz argue, the fee restrictions may discourage some attorneys from representing workers compensation claimants. If that is the case, they have identified a problem properly the concern of the Legislature. *See Crosby v. State, Workers' Compensation Bd.,* 57 N.Y.2d 305, 456 N.Y.S.2d 680, 442 N.E.2d 1191, 1195 (1982). We offer no opinion on the wisdom of the legislative mandate to the Bureau, but conclude only the record of this rulemaking proceeding is adequate under the Act, and the Bureau's promulgation of the maximum hourly rate and the fee caps was not an arbitrary or capricious application of its statutory authority.

### III

[¶ 27] The Bureau asserts the district court erred in holding promulgation of N.D.A.C. § 92–01–02–11.1(9)(e), requiring advance approval for reimbursement of a claimant's costs in excess of $100, was beyond the scope of the Bureau's authority.

[¶ 28] The Bureau is statutorily directed to "pay an injured employee's . . . costs from the bureau general fund." N.D.C.C. § 65–02–08. The statute also gives the Bureau general authority to adopt "rules necessary to carry out this title." N.D.C.C. § 65–02–08. N.D.A.C. § 92–01–02–11.1(9)(e) says the Bureau will reimburse "[o]ther reasonable and necessary costs, not to exceed one hundred dollars. Other costs in excess of one hundred dollars may be reimbursed only upon agreement, in advance, by the bureau." The district court noted the 1991 Legislature deleted a provision of N.D.C.C. § 65–02–08 that had said the "bureau may establish reasonable rules governing . . . reimbursement for costs. . . ." 1991 N.D. Sess. Laws Ch. 714, § 29. The court ruled the Legislature therefore removed the Bureau's authority to adopt rules concerning costs, and because the "word 'reasonable' was not used by the legislature in describing the costs that the Bureau

shall pay," concluded "[t]hat portion of the rule that limits costs to $100 is beyond the scope of the Bureau's authority to adopt since it is not provided for in [the] statute." The district court's analysis is flawed.

[¶ 29] Our review of the 1991 legislative history does not reveal any intention on the part of the Legislature to remove the authority of the Bureau to adopt rules regarding costs. The most plausible explanation for deleting the language relied on by the district court is the language was found to be surplusage because the first sentence of N.D.C.C. § 65–02–08 already authorized the Bureau to "adopt rules necessary to carry out this title." Moreover, the district court's reliance on the absence of any statutory language limiting reimbursement of costs to claimants to "reasonable costs" suggests the Bureau is statutorily directed to pay a claimant's "unreasonable costs." But, this Court does "not construe statutes to reach absurd results." *State v. Trosen,* 547 N.W.2d 735, 739 (N.D.1996). We construe the reference to reimbursement of a claimant's costs in N.D.C.C. § 65–02–08 to mean "reasonable costs," and the statute gave the Bureau authority to adopt rules relating to reimbursement of reasonable costs.

[¶ 30] An administrative regulation may not exceed statutory authority or supersede a statute, and a regulation which goes beyond what the Legislature has authorized is void. *Moore v. North Dakota Workmen's Comp. Bureau,* 374 N.W.2d 71, 74 (N.D. 1985). Contrary to the argument of Little and Dietz, the rule enacted by the Bureau does not give it any authority to deny reimbursement of any reasonable costs, but merely requires advance, rather than after-the-fact, approval of costs in excess of $100. The regulation merely governs the procedure for collecting costs and makes no substantive change in the statutory requirement of reimbursement for a claimant's reasonable costs. *See, e.g., Wehmeier v. Public School Retirement System,* 631 S.W.2d 893, 901 (Mo.Ct. App.1982).

[¶ 31] We conclude the Bureau did not act beyond its statutory authority in adopting a $100 limit for reimbursement of a claimant's

reasonable and necessary costs, unless approved by the Bureau in advance of their accrual.

## IV

[¶ 32] After Little and Dietz appealed to the district court, the Bureau moved for leave to pursue discovery of Little and Dietz's recovery of fees from permanent partial impairment awards and from clients in cases where fees were not paid by the Bureau. Little and Dietz responded to the motion, arguing discovery is not allowed in an administrative appeal and, in any event, "the request to obtain information about permanent partial impairment contingency fees is irrelevant and misleading." Little and Dietz accompanied their response with a request for attorney fees as a sanction under N.D.R.Civ.P. 11 or under the authority of N.D.C.C. § 28–32–21.1. The Bureau then withdrew its motion for leave to pursue discovery, but Little and Dietz continued to pursue the request for attorney fees.

[¶ 33] The district court ruled even if discovery is authorized under the Act, the information sought by the Bureau was not relevant to the case. The court concluded it could grant attorney fees under either N.D.R.Civ.P. 11 or N.D.C.C. § 28–32–21.1, and awarded Little and Dietz $450.

[¶ 34] Although the district court found it could award attorney fees under either the rule or the statute, both parties treat the district court's order as awarding attorney fees solely under N.D.C.C. § 28–32–21.1. In accordance with the parties' arguments on this issue, we will treat the district court's order as awarding attorney fees solely under the authority granted by statute.

[¶ 35] Attorney fees and costs in administrative agency actions are provided for in N.D.C.C. § 28–32–21.1(1) and (2):

"1. In any civil judicial proceeding involving as adverse parties an administrative agency and a party not an administrative agency or an agent of an administrative agency, the court must award the party not an administrative agency reasonable attorneys' fees and costs if the court finds in favor of that party and, in the case of a final agen-

cy order, determines that the administrative agency acted without substantial justification.

"2. This section applies to an administrative or civil judicial proceeding brought by a party not an administrative agency against an administrative agency for judicial review of a final agency order, or for judicial review pursuant to this chapter of the legality of agency rulemaking action or a rule adopted by an agency as a result of the rulemaking action being appealed."

[¶ 36] The Bureau asserts the court erred in awarding attorney fees because the statute does not apply to its motion for leave to pursue discovery, which resulted in the court's order granting the request for attorney fees, but authorizes an award of attorney fees only if the party not an administrative agency prevails on the merits of the appeal.

[¶ 37] When interpreting a statute, to determine the Legislature's intent, we look first to the language of the statute and give it its plain, ordinary, and commonly understood meaning. *Goodleft v. Gullickson*, 556 N.W.2d 303, 306 (N.D.1996). If a statute is clear and unambiguous, we do not disregard the letter of the statute under the pretext of pursuing its spirit. *Jones v. Pringle & Herigstad, P.C.*, 546 N.W.2d 837, 840 (N.D. 1996). Statutes must be construed as a whole to give each provision meaning and effect. *Stewart v. Ryan*, 520 N.W.2d 39, 45 (N.D.1994).

[¶ 38] The language of N.D.C.C. § 28–32–21.1 is expansive and inclusive, and we will not imply exceptions to the statute's coverage. *See Medcenter One v. N.D. State Bd. of Pharm.*, 1997 ND 54, ¶ 27, 561 N.W.2d 634. We believe the statute is clear and unambiguous, and does not call for the limitation sought by the Bureau.

[¶ 39] Subsection 2 of the statute makes the attorney fee provision applicable to an "administrative or civil judicial proceeding" brought by a nonadministrative party for judicial review of a "final agency order," "the legality of agency rulemaking action," or "a

rule adopted by an agency as a result of the rulemaking action being appealed." This is a civil judicial proceeding for judicial review of a rule adopted by an agency. Subsection 1 of the statute broadly directs a court in "any civil judicial proceeding" between a nonadministrative party and an agency to award the nonadministrative party reasonable attorney fees and costs "if the court finds in favor of that party and, *in the case of a final agency order, determines that the administrative agency acted without substantial justification.*" (Emphasis added). By limiting the "without substantial justification" requirement to cases of a "final agency order," the Legislature recognized attorney fees and costs could be awarded to a nonadministrative party who prevails in some instances without having to show an absence of substantial justification for the agency's action. This case did not involve a final agency order rendered by an agency acting in an adjudicatory, quasi-judicial capacity, *see Lamplighter Lounge, Inc. v. State,* 523 N.W.2d 73, 74–75 (N.D.1994), and the district court correctly ruled no showing of an absence of substantial justification was necessary.

[¶ 40] The Legislature clearly evidenced its intention attorney fees and costs could be awarded to a nonadministrative party in some instances where the court simply "finds in favor of that party." The Bureau's motion for leave to pursue discovery and the resulting request for attorney fees were clearly an intertwined part of this rulemaking appeal. The language of the statute does not limit payment of attorney fees and costs to instances where the nonadministrative party prevails on the underlying appeal, to the exclusion of other related motions and orders which are made and rendered in conjunction with the appeal.

[¶ 41] We apply the abuse-of-discretion standard of review to a challenge of an award of attorney fees under N.D.C.C. § 28–32–21.1. *See Lamplighter* at 75. The trial court did not abuse its discretion in finding in favor of Little and Dietz on the Bureau's motion for leave to pursue discovery, and in awarding Little and Dietz $450 in attorney fees for responding to the motion.

V

[¶ 42] We reverse the judgment invalidating N.D.A.C. § 92–01–02–11.1(1), (3)(b) through (i), and (9)(e), and we affirm the order awarding attorney fees.

[¶ 43] VANDE WALLE, C.J., MARING, J., and WILLIAM W. McLEES, District Judge, concur.

[¶ 44] WILLIAM W. McLEES, District Judge, sitting in place of NEUMANN, J., disqualified.

MESCHKE, Justice, concurring and dissenting.

[¶ 45] I concur with the majority opinion in part III (affirming the new rule requiring advance approval for reimbursement of a claimant's costs over $100), and in part IV (affirming attorney fees to Little and Dietz for resisting the Bureau's spurious motion for discovery). In part II, I concur that the maximum hourly rate is not arbitrary enough to invalidate the rule, but I disagree with much of the analysis in parts IIB and IIC. I dissent from the majority's conclusion that the "record of this rulemaking proceeding is adequate" for the tiered maximum attorney fees, and I dissent from the majority's implicit conclusion the tiered caps are reasonable.

I

[¶ 46] For a long time, North Dakota's Workers' Compensation Act has commanded the Bureau to compensate a worker's attorney for legal services to prove a claim when it is disputed. *See* 1943 N.D. Laws, ch. 274, § 10: "All fees on claims for legal ... services rendered under this Act to any claimant shall be in accordance with schedules of fees adopted or to be adopted by the Commissioners of the Workmen's Compensation Bureau and subject to the approval of said Commission." A like command remains in NDCC 65–02–08 to this day: "All fees on claims for legal ... services rendered under this title to an injured employee must be in accordance with schedules of fees adopted by the bureau." By 1991, the hourly rate for all legal services was $60.

[¶ 47] In 1989 and 1991, the Legislature began reducing reimbursements to an in-

jured worker for legal services in establishing the claim. 1989 N.D. Laws, ch. 767, §§ 1–3; 1991 N.D. Laws ch. 714, § 30. A new 1991 section, codified at NDCC 65–02–17, continued payment of the worker's legal expenses where the worker requested binding arbitration but, where the worker requested an administrative hearing, payment of the injured worker's attorney fees was authorized only if the worker prevailed. The Bureau then adopted a rule effective November 1, 1991, NDAC 92–01–02–11.1 (1992), that set the non-contingent rate for attorney fees at $70 hourly, and the contingent rate at $85 hourly.

[¶ 48] Historically, North Dakota thus has been one of a "substantial majority" of states that shift the legal expenses on a claim from the injured worker to the contesting carrier or employer when the worker prevailed. 8 Arthur & Lex K. Larson, *Larson's Workers' Compensation Law*, § 83.12(b)(1), at 15–1306–1314 (1995). Reimbursing an injured worker for legal expenses is important because the benefits are already so "closely calculated" and minimal that "a serious question arises whether the social objectives of the [workers compensation] legislation may to some extent be thwarted" by associated legal costs for the worker. *Id.* § 83.11. "The benefit scales are so tailored as to cover only the minimum support of the claimant during disability." *Id.*

[¶ 49] Since 1989, the North Dakota Legislature has continued to pare reimbursement of a worker's legal expenses. *See* 1989 N.D. Laws, ch. 767, §§ 1–3; 1993 N.D. Laws, ch. 619, §§ 1–2; 1995 N.D. Laws, ch. 612, §§ 1–3, and ch. 614, §§ 1–7. The changes first shackled a worker's ability to obtain legal services: "This section does not prevent an injured employee or an employer from hiring or paying an attorney; however, the employee's attorney may not seek or obtain costs or attorney's fees from both the bureau and the employee relative to the same services." NDCC 65–02–08 (part). The 1995 changes also set up a bureaucratic hurdle prohibiting payment of "attorney fees to an attorney who represents an injured employee in a disputed claim before the bureau unless the injured employee has first attempted to resolve the dispute through" a new "workers' adviser program" enacted in NDCC 65–02–27. The changed NDCC 65–02–08 arbitrarily designated a maximum percentage limit: "Except for an initial determination of compensability, an attorney's fee may not exceed twenty percent of the amount awarded, subject to a maximum fee set by administrative rule." Adding to the longstanding direction that the Bureau "adopt rules necessary to carry out this title," the 1993 changes to NDCC 65–02–08 (my emphasis) also directed the Bureau to "establish, by administrative rule, a *reasonable maximum hourly rate and a maximum fee* to compensate claimants' attorneys for legal services following … issuance of an administrative order under chapter 28–32…."

[¶ 50] Parallel 1995 changes to NDCC 65–02–15 on binding-arbitration procedures directed:

> The bureau shall pay an injured employee's attorney's fee only when the employee prevails. The bureau shall adopt rules to establish a maximum fee for an injured employee's attorney. An attorney's fee may not exceed twenty percent of the amount awarded.

Amendments to NDCC 65–10–03 in 1989 had required rulemaking to limit attorney fees for obtaining judicial review:

> The bureau shall, pursuant to section 65–02–08, establish a maximum fee to be paid in an appeal, provided that the maximum fee may be exceeded upon application of the claimant and approval of the court, upon a finding that the claim had clear and substantial merit, and that the legal or factual issues involved in the appeal were unusually complex.

[¶ 51] Following the comprehensive directions in NDCC 65–02–08, 65–02–15, and 65–10–03, the Bureau revised NDAC 92–01–02–11.1, effective January 1, 1996, to limit reasonable costs, designate a reasonable maximum hourly rate, and set maximum fee caps in reimbursing the attorney fees for a worker who prevails on a disputed claim. That rulemaking resulted in this appeal.

## II

[¶ 52] An agency's rulemaking must be judicially reviewed "based only on the record filed with the court." NDCC 28–32–19.1 and 28–32–21. Our Administrative Agencies Practice Act shares a common derivation with the 1981 Model State Administrative Procedure Act. *Shark v. U.S. West Communications, Inc.*, 545 N.W.2d 194, 197 n. 1 (N.D.1996). The Comments to the Model Act help explain the importance of the record:

> In requiring an official agency rule-making record, [the statute] should facilitate a more structured and rational agency and public consideration of proposed rules, and the process of judicial review of the validity of rules.

*Model State Administrative Procedure Act (1981)* § 3–112, 15 U.L.A. 49, 50 (1990). Another Comment to the parallel Model Act section requiring a rulemaking record emphasizes, "to the extent another provision of law expressly requires a particular class of rules to be made by the agency and, therefore, judicially reviewed, wholly on the basis of the official agency rule-making record, that other provision of law will control." *Id.* at 51. Yet the majority opinion views the North Dakota directive for judicial review of a new rule "only on the record" as "vague," assumes that "no provisions incorporating adjudicatory agency functions into agency rulemaking actions" exist, and declares "we will not apply concepts of evidentiary proof suitable in an adjudicatory setting to an agency's rulemaking action."

[¶ 53] In my opinion, the majority's declaration is wrong. The majority shut their eyes to "only" in the directive for judicial review "on the record" in NDCC 28–32–19.1. The majority thus makes the clear directive that judicial review be "based only on the record filed with the court" meaningless.

[¶ 54] "Giving the word 'only' its ordinary meaning, and applying it in its restrictive sense, as qualifying the word[s] to which it naturally belongs, the conclusion cannot be escaped that it restricts the meaning to be given to [those words]." *Dowagiac Mfg. Co. v. Mahon*, 13 N.D. 516, 101 N.W. 903, 903 (1904). "[T]he Legislature must be presumed to have approved and passed the bill with the intention that the word 'only' should be given its usual ordinary meaning. According to Webster 'only' means exclusively, solely, merely, for no other purpose, at no other time, in no other wise." *Ex parte Salhus*, 63 N.D. 238, 247 N.W. 401, 402 (1933). Although the majority assigns it no meaning, "only" means exclusively.

[¶ 55] The majority opinion declares "[i]t is not the function of this Court to decide whether the ... hourly rate and the fee caps are reasonable." But the authorizing section, NDCC 65–02–08, gave the Bureau power to set only "a reasonable maximum hourly rate and a maximum fee." Our standards of review in NDCC 28–32–19.1 allows judicial approval of a new rule only when the agency has complied with the rulemaking procedures, when the new rule is constitutional, when the new rule is not an arbitrary or capricious application of the agency's authority, and when the rule is within the agency's authority. If the rate and fee caps are not demonstrably reasonable, as the authorizing legislation requires, I do not comprehend how they can be approved under our standards of review.

[¶ 56] The amount of attorney fees to be reimbursed for an individual worker's claim is directly affected by the maximum fees set by these rules. The United States Supreme Court has commented on the nature of judicial review in this kind of rate-making context:

> In prior opinions we have intimated that even in a rulemaking proceeding when an agency is making a " 'quasijudicial' " determination by which a very small number of persons are " 'exceptionally affected, in each case upon individual grounds,' " in some circumstances additional procedures may be required in order to afford the aggrieved individuals due process.

*Vermont Yankee Nuclear Power Corp. v. N.R.D.C.*, 435 U.S. 519, 542, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978). As *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971), explained, " '*post hoc* ' rationalizations ... have traditionally been found to be an inadequate basis for review." When a

specific statute authorizes a successful party to recover reasonable attorney fees, setting the amount is an adjudicative act. *See Duchscherer v. W.W. Wallwork, Inc.,* 534 N.W.2d 13, 16 (N.D.1995). The amount of attorney services for an individual worker's claim will vary considerably, depending on the complexity of the factual and legal issues, as well as the quality and quantity of the professional and legal efforts contesting the claim. *Id.* at 17. Setting reasonable attorney fees is not a quasi-legislative function, but is essentially an adjudicative or quasi-adjudicative function. While some rulemaking can be undoubtedly policy-making and quasi-legislative, setting reasonable attorney fees is surely more adjudicative and should be reviewed accordingly.

### III

[¶ 57] I join with the majority in concluding that NDCC 65-02-08 authorized the Bureau to make rules for reimbursement of reasonable costs, and that the rule requiring advance approval for reimbursement of a claimant's costs over $100 is reasonable. I agree this regulation merely governs the procedure for collecting costs and makes no substantive change in the statutory direction to reimburse a claimant's reasonable costs. If the Bureau should unreasonably deny approval of a worker's advance request to authorize certain costs, that denial is subject to correction by judicial review and to action under NDCC 65-10-03 to compel the Bureau to reimburse the unnecessary attorney fees expended for the correction.

### IV

[¶ 58] I concur that the $85 hourly rate is minimally supported by this record as a reasonable amount. "The rate and hours expended by opposing counsel are often probative of the reasonableness of attorney fees for prevailing counsel." *Duchscherer,* 534 N.W.2d at 19. Determining attorney fees reasonably depends, however, on more than just the hourly rate.

[¶ 59] Thus, there is some force in the appellants' argument that the $85 hourly contingent rate to a prevailing worker's attorney "cannot be considered reasonable compensa-

tion" when the Bureau pays that same non-contingent rate to the contesting attorney, win or lose. Obviously, the total effect is to discourage claims.

[¶ 60] A worker has the greater legal burden to prove the claim, but must do so without equivalent financial resources. This kind of increasingly unbalanced bureaucratic administration will, I fear, eventually lead to destruction of the social and legal foundations of the workers compensation compact. If so, I would anticipate policy and politics will then combine to bring about a return to the courts of enforcement of injured workers' claims through tort law. But that potential is well-beyond the range of judicial review for this case.

[¶ 61] In this record, there is some evidence that $85 hourly is a reasonable rate. Therefore, I concur that the hourly rate in the rule is within the agency's authority.

### V

[¶ 62] I agree with the district court that there is *no* evidence in this record to justify or support the reasonableness of the tiers of maximum fees set by this rule. Setting maximum fees in tiers commensurate with the expected amount of work necessary through each stage of a claim is, of course, reasonable. But this record has no facts, figures, or other information about the amount or range of legal work needed for each stage that might support the tiers set in the rule. I therefore dissent.

[¶ 63] The majority excuses the lack of record information to gauge the reasonableness of the "fee cap" amounts by assuming the Bureau "arrived" at the tiers "by estimating, through its experience and expertise, the amount of work involved at the various levels of the proceedings." If the Bureau did that, we do not know how they did it because there is no information about it in this record. Instead, the Bureau seems to be saying, "trust us, we know what is best," without tendering a single clue about "the amount of work involved at the various levels of the proceedings" on claims ordinarily.

[¶ 64] The majority reasons "[i]t is not the function of this Court to decide whether ...

the fee caps are reasonable...." But neither an agency nor a court can fix reasonable attorney fees without evidence about the work performed. *See City of Bismarck v. Thom,* 261 N.W.2d 640, 646 (N.D.1977)(the number of hours expended is an essential and relevant factor in setting attorney fees). The Legislature made the policy direction for reasonable attorney fees; the Bureau is charged with factually implementing that policy, not making a new policy, as the majority seems to assume.

[¶ 65] Since setting attorney fees is essentially an adjudicative function, fees cannot be set for a case without evidence of the hours worked. *Id.* Likewise, tiered caps on attorney fees cannot be fore-ordained without evidence about the usual amount of work for each stage. Undoubtedly, having paid reasonable fees in past cases based on the amount of work in each one, the Bureau has relevant information available to it. How it used that information for this rulemaking was not disclosed in this record. In my opinion, without that information, there is no way to judicially review the tiered fee caps "based only on the record."

[¶ 66] Of course, from its available information, the Bureau is competent to do factfinding about the range of legal services needed to prove a worker's claim for each stage. The Bureau offered us no explanation why it failed to make a record of that information in making this rule. Within the range of its information, if it was part of the record, I would agree the Bureau would have the considerable discretion the majority posits. But the Bureau should not be permitted to exercise its discretion secretly, without a record, and expect judicial review blindly to rubber-stamp its actions.

## VI

[¶ 67] I would affirm the district court's holding that the portions of the rule on the maximum fee caps is invalid. Therefore, to that extent, I dissent. I would remand for the Bureau to develop an adequate record to show those tiered classifications reasonably correspond to the "expected amount of work that should be necessary."

[¶ 68] Herbert L. Meschke.