2014 ND 79

**Dennis WHEDBEE, Appellant**

v.

**NORTH DAKOTA WORKFORCE SAFETY & INSURANCE FUND, Appellee.**

v.

**Black Hawk Energy Services, Inc., Respondent.**

No. 20130391.

Supreme Court of North Dakota.

April 29, 2014.

Stephen D. Little, Bismarck, ND, for appellant.

Mitchell D. Armstrong (argued) and Brian Schmidt (on brief), Special Assistant Attorneys General, Bismarck, ND, for appellee.

CROTHERS, Justice.

[¶ 1] Dennis Whedbee appeals a district court judgment affirming Workforce Safety and Insurance's ("WSI") binding dispute resolution denying Whedbee's request for a myoelectric prosthesis and approving a body-powered prosthesis. Whedbee argues the binding dispute resolution was an abuse of discretion and violated his due process rights. He argues that WSI should have selected an independent medical examiner located closer to his residence and that his treating physician's opinion should have been given controlling weight. We affirm.

I

[¶ 2] On September 23, 2012, Whedbee suffered a compensable injury from an oil rig explosion while working for Black Hawk Energy Services, Inc. Whedbee sustained a below-the-elbow left arm amputation. WSI accepted liability for several injuries, including Whedbee's amputation.

[¶ 3] Whedbee lives in Pennsylvania and received treatment there from Dr. Marshall Balk. Dr. Balk recommended Whedbee receive a myoelectric prosthesis and emphasized the myoelectric prosthesis would help Whedbee in daily activities. Dr. Balk stated the myoelectric prosthesis would "hold up" under his job requirements and, in fact, was more elaborate than he needed to perform his duties as a safety specialist with Black Hawk. Dr. Balk noted the myoelectric prosthesis likely would need replacement every five to eight years.

[¶ 4] WSI requested an independent medical examination from Dr. Ronald Bateman of Edina, Minnesota, to determine the appropriateness of the myoelectric prosthesis. WSI provided Dr. Bateman with the medical review of Dr. Luis Vilella, WSI's medical director. Dr. Bateman recommended Whedbee receive a body-powered prosthesis for reasons including: (1) it would "maintain a defined functional state for a reasonable period of time," whereas the myoelectric prosthesis likely would need replacement every five to eight years; (2) Whedbee was physically

capable of using the body-powered prosthesis; (3) the myoelectric prosthesis would put more strain on Whedbee's left shoulder, which he was still rehabilitating from his injury; (4) the myoelectric prosthesis "is very fragile and expensive to repair"; (5) if Whedbee was concerned with appearances, "an artificial hand could be fabricated over the split hook"; and (6) the myoelectric prosthesis may "be very sensitive to excessive moisture, dust and easy breakage" while he worked in and around the oil rigs.

[¶ 5] WSI denied the myoelectric prosthesis because Dr. Bateman opined the body-powered prosthesis was appropriate for Whedbee, because Dr. Balk opined the myoelectric prosthesis was more elaborate than Whedbee needed to perform his duties as a safety specialist and because it was not the most cost-effective option. Whedbee contested WSI's decision, requesting binding dispute resolution. WSI's binding dispute resolution review committee agreed the myoelectric prosthesis was not the most cost-effective option, denying the myoelectric prosthesis and approving the body-powered prosthesis.

[¶ 6] Whedbee appealed to the district court, asserting the myoelectric prosthesis is cost-effective and medically appropriate. The district court affirmed WSI's binding dispute resolution decision, concluding WSI complied with the law and its decision was the result of a rational mental process. Whedbee appealed.

## II

▇▇ [¶ 7] Section 65–02–20, N.D.C.C., provides: "Dispute resolution under this section is not subject to chapter 28–32 or section 65–01–16. . . . A dispute resolution decision under this section requested by an employee is reviewable by a court only if medical treatment has been denied to the employee. . . . The dispute resolution decision may be reversed only if the court finds that there has been an abuse of discretion in the dispute resolution process." "An abuse of discretion occurs if a hearing officer acts in an arbitrary, unreasonable, or capricious manner or if the hearing officer misinterprets or misapplies the law." *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 9, 663 N.W.2d 161. " '[A] decision is arbitrary, capricious, or unreasonable if it is not the product of a rational mental process.' " *Sloan v. N.D. Workforce Safety & Ins.*, 2011 ND 194, ¶ 11, 804 N.W.2d 184 (citation omitted).

## III

### A

▇▇ [¶ 8] Whedbee argues WSI's denial of the myoelectric prosthesis was an abuse of discretion. Section 65–05–07, N.D.C.C., provides WSI shall furnish medical services and supplies, including prosthetics, to rehabilitate an injured employee. Section 65–02–20, N.D.C.C., provides the managed care program should "effect the best medical solution for an injured employee in a cost-effective manner upon a finding . . . the employee suffered a compensable injury." It therefore falls on WSI to evaluate a requested prosthetic device.

[¶ 9] WSI approved the body-powered prosthesis instead of the myoelectric prosthesis for several reasons, basing its decision on the medical reviews of Drs. Balk, Bateman and Vilella. WSI determined the myoelectric prosthetic was more elaborate than Whedbee needed for his work activities as a safety specialist. The myoelectric device was heavier than the body-powered device, raising concern over how the extra weight would affect Whedbee's rehabilitation. The myoelectric device's cost was concerning because it would need replace-

ment every five to eight years and would be susceptible to excessive moisture, dust and potential breakage.

[¶ 10] WSI is not required to provide Whedbee's preferred device. WSI appropriately considered each device's durability, cost and impact on Whedbee's injuries. WSI was not arbitrary, capricious or unreasonable in concluding the body-powered prosthesis was the best medical solution in a cost-effective manner. The binding dispute resolution was not an abuse of discretion.

## B

[¶ 11] Whedbee argues his due process rights were violated because Drs. Vilella and Bateman did not testify under oath, no independent administrative law judge considered the matter and the decision was made by WSI's review committee. For Whedbee's argument to prevail, he must have a property interest in his medical care and WSI's decision must result in a termination of benefits. "When deciding a due process claim, we consider whether a constitutionally protected property or liberty interest is at stake and, if so, whether minimum procedural due process requirements were met." *Whitecalfe v. N.D. Dept. of Transp.*, 2007 ND 32, ¶ 20, 727 N.W.2d 779; *see, e.g., Drayton v. Workforce Safety & Ins.*, 2008 ND 178, ¶ 17, 756 N.W.2d 320 (due process considerations require notice and an opportunity to respond where a termination of a continuing disability benefit is concerned). This Court stated:

> " 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' ... A crucial factor in determining whether a particular statutory benefit

constitutes a property interest is the nature and degree of discretion given to the governmental administrator in awarding or denying the benefit. A statute does not create an entitlement for due process purposes if the statute confers discretion on the governmental agency or official without providing objective criteria for and limitations upon that discretion."

*Ennis v. Williams Cnty. Bd. of Comm'rs*, 493 N.W.2d 675, 678 (N.D.1992) (citations omitted). Section 65–02–20, N.D.C.C., provides that WSI, through binding dispute resolution, will decide the best medical solution in a cost-effective manner. Section 65–02–20, N.D.C.C., grants WSI broad discretion to encourage efficient determination of the issues. Important in this case is that no termination of benefits occurred. Rather, one prosthetic device was approved over another. Whedbee does not have a protectable property interest in receiving one device over another, here, a myoelectric prosthesis rather than a body-powered prosthesis.

[¶ 12] Further, section 65–02–20, N.D.C.C., specifically states binding dispute resolution is not subject to chapter 28–32 or section 65–01–16, N.D.C.C. WSI therefore is not required to provide a trial-type procedure for managed care decisions. Whedbee asserts he should receive a trial-type hearing, arguing *Mathews v. Eldridge* supports his position. 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Mathews* addressed whether an evidentiary hearing was required prior to terminating social security disability benefits:

> "More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous depriva-

tion of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* at 334–35, 96 S.Ct. 893 (citation omitted). Regarding the first prong, the private interest affected is not strong because Whedbee does not have a property interest in the benefit and because, even if he did, he was not denied the benefit but was given a different form of the benefit requested. The second prong does not support an evidentiary hearing requirement because Whedbee was provided a prosthetic and because he is able to request a different prosthetic if he experiences changes in his progress or recovery. Further, providing for additional procedures would controvert the legislature's goals of enhancing efficiency. Regarding the third factor, if all managed care decisions merited a trial-type process, the increased administrative costs would be too great to justify the perceived benefit of the hearings. Whedbee failed to establish a due process violation.

### C

▮ [¶ 13] Whedbee argues WSI should have retained an independent medical examiner located closer to Whedbee's residence and given controlling weight to Whedbee's treating physician. Whedbee lived in Homer City, Pennsylvania, and Dr. Bateman was in Edina, Minnesota.

[¶ 14] Section 65–05–28(3), N.D.C.C., states:

"The organization may at any time require an injured employee to submit to an independent medical examination or independent medical review by one or more duly qualified doctors designated or approved by the organization. The organization shall make a reasonable effort to designate a duly qualified doctor licensed in the state in which the employee resides to conduct the examination before designating a duly qualified doctor licensed in another state or shall make a reasonable effort to designate a duly qualified doctor licensed in a state other than the employee's state of residence if the examination is conducted at a site within two hundred seventy-five miles [ ] from the employee's residence."

N.D.C.C. § 65–05–28(3). Nothing in the record established that Whedbee objected to this independent medical examination or that WSI did not attempt to find a doctor located closer to Whedbee. Further, Whedbee has not shown how the location of the independent medical examination prejudices him or discredits Dr. Bateman. *See Johnson v. N.D. Workers' Comp. Bureau,* 539 N.W.2d 295, 298 (N.D.1995) ("When no statutory remedy is provided for a statutory violation, we look to whether the victim of the violation was prejudiced.").

[¶ 15] Whedbee argues under N.D.C.C. § 65–05–08.3 that Dr. Balk's opinion should have been given controlling weight unless WSI explained the weight it gave to Dr. Balk's and Dr. Bateman's opinions under the statutory criteria for resolving conflicting opinions. Whedbee ignores the explicit provision in section 65–05–08.3(2), N.D.C.C., that the section does not apply to managed care programs under N.D.C.C. § 65–02–20. Whedbee has not shown the independent medical examination location prejudiced him or Dr. Balk's opinion should have been given controlling weight.

### IV

[¶ 16] We conclude that WSI did not abuse its discretion in awarding the body-

powered prosthetic, that Whedbee's due process rights were not violated, that Whedbee did not show the independent medical examination location prejudiced him or that Dr. Balk's opinion should have been given controlling weight. We affirm the district court's judgment affirming Whedbee's binding dispute resolution decision.

[¶ 17]   GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 18]   I respectfully dissent.

[¶ 19]   In his independent medical evaluation, Ronald Bateman, O.D., and WSI, in its decision, considered only the needs of the claimant's job and not the claimant's "other activities of daily living" in deciding the "best medical solution" as required by our statute. Because of this flawed framework of analysis, the decision in not in accordance with the law, and I would reverse and remand.

[¶ 20]   Under the needs-only-of-the-job analysis, WSI could say that a worker who lost a leg on the job could now do the job sitting down and therefore a wheelchair or crutches, instead of a prosthesis, would be the "best medical solution." Or, if a worker needs only one eye to do a job, an eye patch could be the "best medical solution" for a correctable eye injury. Such a legal standard is inconsistent with the fundamental fairness necessary to sustain the "grand bargain."

[¶ 21]   "The workers' compensation system ... constitutes a grand bargain in which injured workers forego the possibility of larger awards potentially available through the tort system (the quid) in exchange for a no fault system that provides more certainty of an award (the quo)." *Satterlee v. Lumberman's Mut. Cas. Co.,* 2009 MT 368, ¶ 56, 353 Mont. 265, 222 P.3d 566 (Morris, J., dissenting). "The employee gives up the right to sue the employer for negligently inflicted injuries, in exchange for sure and certain benefits for all workplace injuries, regardless of fault." *Fleck v. ANG Coal Gasification Co.,* 522 N.W.2d 445, 453 (N.D.1994). The Supreme Court of Oregon explained:

> As an integrated system of social welfare legislation, workmen's compensation embodies two principal and unique social policy purposes. These can be characterized as the social bargain and social insurance purposes.... The impetus, of course, was to alleviate the plight of injured workers who often suffered without remedy under the common law. This purpose has been characterized as a "socially-enforced bargain which compels an employee to give up his valuable right to sue in the courts for full recovery of damages ... in return for a certain, but limited, award. It compels the employer to give up his right to assert common-law defenses in return for assurance that the amount of recovery by the employee will be limited."

*Woody v. Waibel,* 276 Or. 189, 195 n. 6, 554 P.2d 492, 495 n. 6 (1976) (quoting *Van Horn v. IAC,* 219 Cal.App.2d 457, 467, 33 Cal.Rptr. 169, 174 (1963)).

[¶ 22]   Section 65–02–20, N.D.C.C., provides: "The organization shall establish a managed care program ... to effect *the best medical solution* for an injured employee...." (Emphasis added.) Although North Dakota has little interpretive caselaw explaining how to determine the best medical solution for an injured employee, Arkansas courts have developed a line of cases addressing the proper medical procedure which should be provided when an individual is covered under workers' compensation.

[¶ 23] In affirming the approval of a particular medical procedure, an Arkansas court of appeals stated, "The administrative law judge found that the surgical procedure in question was necessary to restore claimant, as far as practicable, to the physical condition he enjoyed immediately preceding this injury." *Crain Burton Ford Co. v. Rogers,* 12 Ark.App. 246, 250, 674 S.W.2d 944, 947 (1984) (quotations omitted). In another Arkansas case, a court held:

> Given the testimonies of appellee's plastic and reconstructive surgeon and the board-certified prosthetic orthotist, there was substantial evidence to support the finding that the myoelectric prosthesis was reasonably necessary to restore appellee as far as practicable to his physical condition before this work-related injury. *See Crain Burton Ford Co. v. Rogers,* 12 Ark.App. 246, 674 S.W.2d 944 (1984).

> While there is evidence that appellee could still become a secondary school math teacher with a less costly conventional prosthesis, it is undisputed that the more advanced myoelectric one would more closely restore appellee to his physical condition that existed before being injured at work.

*Air Compressor Equip. v. Sword,* 69 Ark. App. 162, 167, 11 S.W.3d 1, 3 (2000).

[¶ 24] These courts recognized that the bargain of workers' compensation is not to ensure only that medical treatment enables an injured worker to perform his previous job, but to attempt to restore the worker as close as possible to the physical condition he enjoyed prior to the injury. *See id.*

[¶ 25] Again, in a more recent case, another Arkansas court similarly concluded that because a prosthetic device would not offer any additional functional capabilities or psychological or physiological benefit, the device was not a reasonable and necessary medical treatment. *Shaver v. Land O'Frost,* 2010 Ark. App. 117 at *3–5, 2010 WL 502975 (2010). The court reasoned:

> [I]f Shaver's desired cosmetic prosthesis would "restore [him] as far as practicable to his physical condition before the work-related injury," appellee should be required to provide it. However, prior to his injury Shaver had a working left hand. After his injury, Shaver received a working prosthesis, outfitted with both a metal hook and a rubber-hand attachment. Both provide Shaver with the ability to grasp objects. The requested prosthesis does not bolster Shaver's arm function; it diminishes it.

*Id.* at *4.

[¶ 26] In this case, I would adopt the same framework of analysis as the Arkansas courts. There was evidence demonstrating that the myoelectric prosthesis would bolster Whedbee's arm function, helping him in daily activities. Whedbee presented evidence that the more functional prosthesis would provide him the opportunity of being restored, as closely as possible, to the physical condition he enjoyed prior to his work injury. Employing a needs-only-of-the-job analysis and failing to consider Whedbee's "other activities of daily living" in deciding the "best medical solution," as required by our statute, constituted fundamental error. I would reverse and remand for WSI to apply the correct legal standard as its framework of analysis.

[¶ 27]   DALE V. SANDSTROM