2011 ND 194

**Claud SLOAN, Claimant and Appellant,**

v.

**NORTH DAKOTA WORKFORCE SAFETY & INSURANCE,** Appellee

and

**ANG Coal Gasification Associates,** Respondent.

No. 20100385.

Supreme Court of North Dakota.

Sept. 19, 2011.

Mark G. Schneider, Fargo, N.D., for claimant and appellant.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, N.D. for appellee.

MARING, Justice.

[¶ 1] Claud Sloan appeals from a district court judgment affirming a Workforce Safety & Insurance ("WSI") order awarding him additional permanent impairment benefits. We affirm, concluding WSI's promulgation of administrative rules for assessing pain impairment does not conflict with its statutory authority and was not arbitrary, capricious, or unreasonable.

I

[¶ 2] In December 1985, Sloan sustained a compensable work-related injury while employed at a coal gasification plant in Beulah, North Dakota. WSI awarded

Sloan permanent impairment benefits for his injury and has issued several permanent partial impairment orders since his original injury. Effective April 1, 2009, WSI promulgated N.D. Admin. Code § 92–01–02–25(4) to address pain impairment ratings. Based on the newly adopted rule, WSI reviewed Sloan's pain rating and determined he had sustained an eight percent impairment for pain which, when combined with his prior impairment ratings, totaled a whole body impairment rating of 38 percent. On June 11, 2009, WSI issued an order awarding Sloan additional permanent impairment benefits, in the amount of $8,464.50, based on his combined whole body impairment of 38 percent for his cervical spine, depression, dysphagia, and chronic pain. Sloan requested a rehearing.

[¶ 3] At a November 2009, hearing before an administrative law judge ("ALJ"), a staff attorney for WSI appeared as the only witness and testified regarding the WSI's promulgation of N.D. Admin.Code § 92–01–02–25. The ALJ subsequently issued an order affirming WSI's June 2009 order awarding Sloan additional permanent impairment benefits. Sloan appealed to the district court, which affirmed the order.

## II

[¶ 4] Under the Administrative Agencies Practice Act, courts exercise limited review in appeals from decisions by an administrative agency. *Johnson v. North Dakota Workforce Safety & Ins.*, 2010 ND 198, ¶ 10, 789 N.W.2d 565. On appeal from the district court, we review the administrative agency's decision in the same manner that the district court reviewed the agency's decision. N.D.C.C. § 28–32–49. Under N.D.C.C. § 28–32–46, a district court must affirm an administrative agency order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 5] In reviewing the agency's findings of fact, we do not make independent findings or substitute our judgment for the agency's judgment. *Workforce Safety & Ins. v. Auck,* 2010 ND 126, ¶ 9, 785 N.W.2d 186. Rather, we decide whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Auck,* at ¶ 9. We give similar deference to the factual findings when reviewing an appeal from a final decision by an independent ALJ. *Id.* We, however, do not give deference to the ALJ's legal conclusions. *Id.* Questions of law, including statutory interpretation, are fully reviewable on appeal. *Id.*

## III

[¶ 6] Sloan argues N.D. Admin. Code § 92–01–02–25(4), which purports to "cap" pain impairments at a maximum of nine percent, conflicts with the statute it implements, N.D.C.C. § 65–05–12.2(10).

## A

[¶ 7] Generally, under N.D.C.C. § 65–02–08, the legislature has authorized WSI to promulgate and enforce administrative rules necessary to carry out N.D.C.C. tit. 65. Section 65–05–12.2, N.D.C.C., specifically requires WSI to promulgate rules to govern permanent impairment evaluations, and at the time relevant to this case, provided in part:

6. A doctor evaluating permanent impairment shall include a clinical report in sufficient detail to support the percentage ratings assigned. The organization shall adopt administrative rules governing the evaluation of permanent impairment. *These rules must incorporate principles and practices of the fifth edition of the American medical association's "Guides to the Evaluation of Permanent Impairment" modified to be consistent with North Dakota law, to resolve issues of practice and interpretation, and to address areas not sufficiently covered by the guides.* Subject to rules adopted under this subsection, impairments must be evaluated under the fifth edition of the guides.

. . . .

8. An injured employee is not entitled to a permanent impairment award due solely to pain.

. . . .

10. If the injury causes permanent impairment, the award must be determined based on the percentage of whole body impairment in accordance with the following schedule. . . .

(Emphasis added.) Under that statute, WSI must adopt rules that incorporate the "principles and practices" of the fifth edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* ("AMA Guides"), but which are "modified to be consistent with North Dakota law, to resolve issues of practice and interpretation, and to address areas not sufficiently covered by the guides."

[¶ 8] At the time of order in this case, N.D. Admin. Code § 92–01–02–25(4), which WSI adopted to implement N.D.C.C. § 65–05–12.2, assigned specific pain impairment percentages to table 18–3 of the AMA Guides, stating in part:

g. To determine whether the pain is ratable or unratable, the evaluating physician must answer the three questions in this section. If the answer to all three of the following questions is yes, the evaluating physician should consider the pain ratable. If any question is answered no, the pain is unratable.

(1) Do the individual's symptoms or physical findings, or both, match any known medical condition?

(2) Is the individual's presentation typical of the diagnosed condition?

(3) Is the diagnosed condition one that is widely accepted by physicians as having a well-defined pathophysiologic basis?

h. If the pain is unratable, no percentage may be assigned to the impairment.

i. If the pain is ratable, the evaluating physician shall classify the individual into one of the categories in table 18–3 [of the AMA Guides] and, using the combined values chart of the fifth edi-

tion, calculate a combined overall impairment rating.

j. *The impairment percentages assigned to table 18–3 are:*

    (1) Class 1, mild: one to three percent.

    (2) Class 2, moderate: four to five percent.

    (3) Class 3, moderately severe: six to seven percent.

    (4) *Class 4, severe: eight to nine percent.*

(Emphasis added.) Table 18–3 in the fifth edition of the AMA Guides does not provide specific impairment percentages for each of the categories of ratable pain. Section 92–01–02–25(4)(j), N.D. Admin. Code, therefore, purports to address an area not sufficiently covered in the AMA Guides by assigning specific impairment percentages to the four categories of ratable pain and limiting the maximum percentage for "severe" pain to nine percent.

[¶ 9] Sloan does not contest that his pain impairment was properly found to be "ratable" or that his pain was properly classified as "severe." Rather, he challenges WSI's rule to the extent it assigns a maximum percentage of nine percent to the "severe" category. He claims that allocation is in "conflict" with N.D.C.C. § 65–05–12.2(10).

B

[¶ 10] Administrative rules that have been properly promulgated have the force and effect of law. N.D.C.C. § 28–32–06. However, if an administrative regulation exceeds or supersedes an agency's statutory authority or conflicts with the statute it implements, we have said that such a regulation is void or invalid. *North Dakota Dep't of Human Servs. v. Ryan,* 2003 ND 196, ¶ 10, 672 N.W.2d 649; *Little v. Tracy,* 497 N.W.2d 700, 704 (N.D.1993);

*Moore v. North Dakota Workmen's Comp. Bur.,* 374 N.W.2d 71, 74 (N.D.1985); *Steele v. North Dakota Workmen's Comp. Bur.,* 273 N.W.2d 692, 701 (N.D.1978); *see* N.D.C.C. § 28–32–47. Whether an administrative agency has acted within its statutory authority presents a question of law, which is fully reviewable on appeal. *See Shiek v. North Dakota Workers Comp. Bur.,* 2002 ND 85, ¶ 10, 643 N.W.2d 721; *see also In re Hubbard,* 778 N.W.2d 313, 318 (Minn.2010).

[¶ 11] We have also said that the Administrative Agencies Practice Act limits a court's review of an agency's rulemaking proceeding and that "[w]hen an administrative agency adopts rules under the Act, it is acting in a quasi-legislative, not a quasi-judicial, capacity." *See Little v. Traynor,* 1997 ND 128, ¶¶ 11, 12, 565 N.W.2d 766. Under N.D.C.C. § 28–32–47, in an appeal from an agency's rulemaking action, a court must affirm the rulemaking unless:

1. The provisions of [N.D.C.C. ch. 28–32] have not been substantially complied with in the agency's rulemaking actions.

2. A rule published as a result of the rulemaking action appealed is unconstitutional on the face of the language adopted.

3. A rule published as a result of the rulemaking action appealed is beyond the scope of the agency's authority to adopt.

4. A rule published as a result of the rulemaking action appealed is on the face of the language adopted *an arbitrary or capricious application of authority granted by statute.*

(Emphasis added.) We have explained that the "arbitrary or capricious application of authority" standard of review in N.D.C.C. § 28–32–47(4) "comports with judicial review of other non-judicial decision-

making which is, under the separation of powers, limited to whether the decision is arbitrary, capricious, or unreasonable." *Traynor,* 1997 ND 128, ¶ 17, 565 N.W.2d 766. "[T]he record is adequate if it enables [this Court] to discern the rationale for the decision," and "[a] decision is arbitrary, capricious, or unreasonable if it is not the product of a rational mental process." *Id.*

■■■■ [¶ 12] Our standard of review for WSI's promulgation of administrative rules comports with the general concept that "[r]ules and regulations properly promulgated by a workers' compensation commission or board are entitled to deference in the courts, unless they produce an absurd result, are arbitrary and capricious, or are inconsistent with statutes covering the same subject matter." 100 C.J.S. *Workers' Compensation* § 718 (2000) (citing *Traynor,* 1997 ND 128, 565 N.W.2d 766; *Moore,* 374 N.W.2d 71). "Agency rules which are inconsistent with applicable statutory provisions will be held invalid or void and will not be allowed to stand." *Id.* § 718 (citing *Tracy,* 497 N.W.2d 700); *see also* 3 Admin. L. & Prac. § 9:25[4](a) (3d ed. 2011) ("The arbitrariness standard is generally considered particularly appropriate for review of rulemaking. The application of the arbitrariness test to rules is largely a function of the long established principle that arbitrariness is the appropriate test for policy decisions.").

C

■■■■ [¶ 13] Sloan argues that N.D. Admin. Code § 92–01–02–25(4) conflicts with N.D.C.C. § 65–05–12.2(10) because the statute requires that "[i]f the injury causes permanent impairment, the award *must be determined based on the percentage of whole body impairment*" (emphasis added). Sloan contends the regulation exceeds and conflicts with WSI's statutory authority. He argues that N.D.C.C. § 65–05–12.2(10) does not permit WSI to "cap" the percentage of whole body impairment based on pain at nine percent.

■■■■ [¶ 14] "We construe administrative regulations, which are derivatives of statutes, under well-established principles for statutory construction." *Ryan,* 2003 ND 196, ¶ 11, 672 N.W.2d 649. "[S]tatutory construction requires interpretation of related provisions together, if possible, to harmonize and to give meaning to each provision." *Id.* Section 65–05–12.2, N.D.C.C., plainly required WSI to adopt regulations to govern permanent impairment evaluations and to incorporate principles and practices of the AMA Guides. This statute also authorized WSI to modify the AMA Guides's principles and practices to be consistent with North Dakota law, to resolve issues of practice and interpretation, and to address areas not sufficiently covered by the guides. Sloan contends that N.D.C.C. § 65–05–12.2 requires WSI to make a determination of how "actually impairing" the pain is as a percentage of whole body impairment. We divine no such requirement from the statutory language. In fact, N.D.C.C. § 65–05–12.2(8) specifically provides that a permanent impairment award may *not* be based solely on pain. The language of N.D.C.C. § 65–05–12.2 gives WSI the discretion to adopt rules for determining the appropriate range of percentages for pain impairment. We therefore conclude that as a matter of law N.D. Admin. Code § 92–01–02–25(4) does not conflict with N.D.C.C. § 65–05–12.2.

[¶ 15] In addressing Sloan's claims, both the ALJ and the district court applied the arbitrary and capricious standard of review. In its order, the district court stated:

In requesting rehearing, Sloan did not fault the pain evaluations which

have been performed, nor the categorization of his pain as "severe." He did not argue that WSI lacked authority to promulgate administrative rules, and he did not assert there were procedural irregularities with the rules. He did not object to the WSI administrative rules relating to the process the evaluating physician is to follow to arrive at the classification of an individual into one of the categories of pain related impairment in Table 18–3 of the AMA Guides. He did challenge the sufficiency of the impairment percentages assigned by WSI to Table 18–3 in WSI's administrative rules.

Sloan asked that the ALJ order WSI to "reissue pain regulations that provide for a proper rating and evaluation of all 'pain' associated with an underlying objective impairment based on injury and correlate the percentages of impairment to that pain commensurate with the actual impairment caused." Sloan asserts the assignment of whole person impairment for his category of pain should be more than 50 per cent.

[¶ 16] Although Sloan contends that WSI's administrative rule "conflicts" with N.D.C.C. § 65–05–12.2(10), to the extent Sloan's arguments involve the sufficiency of the percentages adopted in N.D. Admin. Code § 92–01–02–25(4) and whether WSI consulted "independent and unbiased medical practitioners" with expertise in assigning the percentages, our review is limited to whether WSI acted in an arbitrary, capricious, or unreasonable manner, or its decision was not the product of a rational mental process, in promulgating the regulation. *See Traynor*, 1997 ND 128, ¶ 17, 565 N.W.2d 766.

[¶ 17] Sloan contends there are no disputed facts and the issue presented is solely one of law. Sloan was found to be in the most severe impairment category—

class 4 on table 18–3 of the AMA Guides—and was assessed a pain rating of eight percent "whole body." Sloan argues, however, that WSI unreasonably promulgated pain rules that "capped" pain impairment awards at nine percent "whole person," without any provision for determining the actual percentage of whole impairment that the pain causes. Sloan asserts it is uncontested that he had at least 17 percent whole person ratable "pain" impairment, standing alone, secondary to his depression. Sloan also argues capping pain at nine percent is arbitrary, capricious, and unreasonable.

[¶ 18] WSI responds that Sloan's challenge relates to the sufficiency of the impairment percentages assigned by WSI to the AMA Guides table 18–3 and that WSI adopted rules to address an area not sufficiently covered by the AMA Guides. WSI asserts that, in promulgating these rules, WSI's staff attorney researched other jurisdictions regarding application of chapter 18 of the AMA Guides and consulted with WSI's permanent partial impairment auditor, two medical experts, its chief of injury claims and its general counsel. WSI asserts that chapter 18 is only an "enhancement" chapter and, therefore, a 100 percent impairment does not make sense—in part because there is no accepted method to rate pain-related impairment and pain is already taken into account in other chapters of the AMA Guides. We agree.

[¶ 19] At the hearing the ALJ heard testimony that the WSI staff attorney researched other jurisdictions, within the United States and internationally, and sought input from two medical experts regarding application of chapter 18 of the AMA Guides for direction and guidance in preparation for drafting the administrative rules. The ALJ concluded that WSI's staff attorney's research and analysis was not without "any rational basis" and that

the effort to formulate percentages to assign to table 18–3 of the AMA Guides was a logical, reasoned approach. The ALJ held Sloan failed to establish WSI administrative rules were arbitrary, capricious, or unreasonable.

[¶ 20]  Sloan argues that the WSI staff attorney's testimony shows WSI's arbitrariness in adopting the rule, because WSI took the three percent from the AMA Guides and apportioned each additional category the same number of percentage points. Sloan further contends that WSI's reliance on foreign law is not based on North Dakota law and other jurisdictions' application of chapter 18 of the AMA Guides is irrelevant. Sloan argues the "severe" category of chapter 18 "pain" cannot be rationally capped at nine percent whole person impairment.

[¶ 21]  Based upon our review of the record, however, we conclude WSI's promulgation of regulations setting forth specific percentages for purposes of consistency of application of the AMA Guides in North Dakota contemplates an area not sufficiently covered by the fifth edition of the AMA Guides. We agree with WSI's contention that Sloan's challenge relates mainly to the sufficiency of the impairment percentages assigned by WSI to the AMA Guides table 18–3 in its administrative rules. In promulgating the rules, WSI's staff attorney researched other jurisdictions and consulted experts, including experts within WSI. We conclude that WSI's promulgation of the rules was not without a rational basis. Under N.D.C.C. § 65–05–12.2(6), the legislature authorized WSI to adopt administrative rules to incorporate principles not sufficiently covered by the AMA Guides.

[¶ 22]  We conclude that N.D. Admin. Code § 92–01–02–25(4) does not conflict with N.D.C.C. § 65–05–12.2(6) and that WSI has not acted arbitrarily, capriciously,

or unreasonably in adopting N.D. Admin. Code § 92–01–02–25(4)(j).

## IV

[¶ 23]  Sloan has also moved this Court on appeal for attorney's fees and costs under N.D.C.C. § 28–32–50. Under this section a court must award a party, that is not an administrative agency, reasonable attorney's fees and costs, "if the court finds in favor of that party and, in the case of a final agency order, determines that the administrative agency acted without substantial justification." Because we affirm the district court judgment affirming WSI's decision, Sloan's request is denied.

## V

[¶ 24]  We have considered Sloan's remaining arguments and consider them to be without merit or unnecessary to our decision. The district court judgment is affirmed.

[¶ 25] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DANIEL J. CROTHERS, JJ, and BENNY A. GRAFF, S.J.

[¶ 26]  The Honorable BENNY A. GRAFF, S.J., sitting in place of SANDSTROM, J., disqualified.