IN THE SUPREME COURT
STATE OF NORTH DAKOTA

2019 ND 294

State of North Dakota, by and through

Workforce Safety & Insurance,                                                Appellee

v.

Bile Salat,                                                                              Appellant

and

XPO CNW Inc.,                                                                     Respondent

No. 20190056

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Bruce B. Haskell, Judge.

REVERSED.

Opinion of the Court by Crothers, Justice.

Brian Schmidt (argued) and Mitchell D. Armstrong (on brief), Bismarck, ND, for appellee.

Stephen D. Little, Bismarck, ND, for appellant.

**Crothers, Justice.**

[¶1] Bile Salat appeals from a district court judgment reversing an administrative law judge's discontinuation of Salat's benefits. We reverse.

I

[¶2] On February 22, 2016, Salat slipped and fell at work. On February 23, 2016, Salat saw Dr. Klop for right ankle and low back pain. He was diagnosed with a right ankle sprain and back strain, and was placed on restricted duty. Dr. Klop instructed him to use crutches and wear an air brace on his right foot. On March 1, 2016, Salat followed-up with Dr. Klop. She noted Salat had pain to palpation at L4-L5 and tenderness in his right ankle. Dr. Klop diagnosed right ankle pain, right foot joint pain, and low back pain. Salat's work status remained restricted, and he was instructed to start physical therapy for his back. On March 31, 2016, WSI accepted liability for a contusion of the lower back and pelvis and a right ankle sprain.

[¶3] On June 28, 2016, Dr. Klop released Salat to regular duty and instructed him to quit using the walking boot and crutches. Salat's employer, XPO, was notified of his full duty release the same day. He returned to work on June 29, 2016. He worked a full day on June 29, 2016, and a partial day on June 30, 2016. Salat testified he reported to his supervisor on the first and second day that he continued to experience pain. Salat continued to use his walking boot and crutches outside of work but left his walking boot and crutches in his vehicle because they were not allowed at the worksite. Salat's last day at the worksite was July 1, 2016.

[¶4]   On July 1, 2016, Salat reported at the walk-in clinic he was experiencing low back and right ankle pain. Salat returned to Dr. Klop on July 5, 2016, and reported he could not work due to the pain. Dr. Klop noted Salat currently was off work because XPO was closed the week of July Fourth, and instructed him to attempt normal use of his right foot until he was reevaluated the following week. On July 11, 2016, Salat saw Dr. Hart, the podiatrist, who recommended Salat participate in nonimpact activities and use an Exoform ankle brace. Salat did not return to work on July 11, 12 or 13, and did not call his employer on any of those days to notify them he would not be at work. XPO had a "three-day no call/no show" policy which considered job abandonment after an absence of three consecutive days. Under the policy, XPO sent Salat a termination letter on July 15, 2016. Salat reported to Daniel Carmen, XPO's human resource generalist, after he received the termination letter. Carmen contacted WSI to see if they had been alerted that Salat was supposed to be off work for the days he was absent. Carmen also called Sanford Occupational Health to see if Salat had been given the week off for medical issues. Carmen testified neither WSI nor Sanford stated Salat should have been off work July 11-13. Salat continued to see medical providers for his right ankle and back pain after his termination.

[¶5]   On November 11, 2016, Dr. Cooper performed an independent medical exam (IME) with Salat. Dr. Cooper interviewed Salat to obtain medical history, reviewed medical records and conducted a physical examination which included a neuromusculoskeletal evaluation. Dr. Cooper opined Salat's right ankle injury had not healed and was not at pre-injury status, and his low back pain was unrelated to the work-related injury. Dr. Klop reviewed the IME opinion and stated, "I don't have any objective findings on physical exam to challenge or disagree with his medical opinion."

2

[¶6] On August 5, 2016, WSI issued an order discontinuing Salat's disability benefits after June 29, 2016. On December 15, 2016, WSI issued a notice of decision denying further benefits of Salat's lumbar spine after November 11, 2016. Salat requested reconsideration. On January 23, 2017, WSI issued an order discontinuing benefits after November 11, 2016, because Dr. Cooper opined Salat's lumbar condition returned to pre-injury status within three to six weeks of his injury and Dr. Klop did not disagree with his opinion. Salat appealed. The administrative law judge (ALJ) reversed both WSI orders.

[¶7] After the ALJ denied WSI's petition for reconsideration, WSI appealed to the district court. The district court reversed the ALJ's decisions after concluding the ALJ's findings of fact were not supported by a preponderance of the evidence and the ALJ misapplied the law.

[¶8] Salat appeals the district court judgment, arguing no basis existed to reverse the ALJ's determination that the greater weight of the evidence showed he was entitled to benefits.

II

[¶9] Courts exercise limited review in appeals from decisions by an administrative agency. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D. 1979). Under N.D.C.C. § 28-32-46, a district court must affirm an administrative agency order unless:

> "1. The order is not in accordance with the law.
> 2. The order is in violation of the constitutional rights of the appellant.
> 3. The provisions of this chapter have not been complied with in the proceedings before the agency.
> 4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

[¶10] We review administrative agency decisions in the same manner as the district court. *Robinson v. North Dakota Workforce Safety & Ins.*, 2019 ND 201, ¶ 6, 931 N.W.2d 692. In reviewing the agency's findings of fact, "we do not make independent findings of fact or substitute our judgment for that of the agency." *Power Fuels, Inc.*, 283 N.W.2d 214 at 220. Courts instead decide "whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Id.* Similar deference is given to an independent ALJ's factual findings. *Sloan v. North Dakota Workforce Safety & Ins.*, 2011 ND 194, ¶ 5, 804 N.W.2d 184. An ALJ's legal conclusions are reviewed de novo. *Id.* "Questions of law, including statutory interpretation, are fully reviewable on appeal." *Id.*

III

[¶11] WSI argues the disability benefit issue was not preserved for review because Salat's statement of issues only identifies the low back condition after

4

November 11, 2016. We disagree. Rule 3(c) of the North Dakota State Court Rules, Rules of Appellate Procedure (N.D.R.App.P.) stated:[1]

> "(c) Content of the Notice of Appeal. The notice of appeal must:
> (1) specify the party or parties taking the appeal;
> (2) designate the judgment, order, or part thereof being appealed;
> (3) name the court to which the appeal is taken; and
> (4) in an appeal from a civil case or post-conviction relief proceeding, include a preliminary statement of issues."

The rule requires an appellant in a civil action or post-conviction proceeding to include a preliminary list of the issues on appeal. The explanatory note stated the purpose of the rule is:

> "[T]o provide the court information to make a preliminary determination whether oral argument is unnecessary. In this list, the appellant is expected to provide the court notice of the issues of which the appellant is aware at the time the notice of appeal is filed."

This Court has interpreted the word "preliminary" in this context as non-binding. *Alerus Financial, N.A. v. Erwin*, 2018 ND 119, ¶ 9, 911 NW.2d 296 ("The failure to include an issue in the notice of appeal does not preclude review of the issue."). Therefore, because non-binding, the failure to identify all appellate questions in the statement of issues does not prevent review.

---

[1] This rule was amended on March 1, 2019. Salat filed his appeal on February 19, 2019. The previous version is quoted in the opinion. Rule 3(c)(1)-(3) remain the same. Rule 3(c)(4) currently states, "include a concise preliminary statement of issues." The explanatory note states, "Subdivision (c) was amended, effective March 1, 2019, to require the appellant in all appeals include a concise preliminary list of the issues on appeal in the notice of appeal."

IV

A

[¶12] Salat argues the district court erred by reversing the ALJ's finding he is entitled to disability benefits after June 29, 2016. WSI argues the ALJ's determination that Salat should not have been released to regular duty by Dr. Klop and Dr. Hart is not supported by fact or law. We conclude the ALJ reasonably could have determined Salat still was disabled and should not have been released to regular duty. We reverse the district court because the ALJ's findings were supported by the weight of the evidence.

[¶13] "It is the burden of the employee to show that the inability to obtain employment or to earn as much as the employee earned at the time of injury is due to physical limitation related to the injury, and that any wage loss claimed is the result of the compensable injury." N.D.C.C. § 65-05-08(6). "An injured employee's health care provider shall certify the period of disability and the extent of the injured worker's abilities and restrictions." N.D.C.C. § 65-05-08.1(1).

[¶14] The ALJ found Salat's physical limitations prevented him from doing his job after June 29, 2016, and he should not have been released to regular duty. The ALJ found Salat's condition remained unchanged from when Dr. Klop advised him he could not work, and Dr. Klop's instruction that Salat work without crutches or a walking boot was because Salat could not return to work while using these devices. Although the medical records indicate Dr. Klop's and Dr. Hart's *plan* was for Salat to begin full weight bearing activities with use of a high walking boot and to taper off crutches, no evidence supports finding Salat's injuries improved by June 20 or 28, 2016, so that he was ready

6

to perform those activities without assistance. Further, Carmen testified that XPO required wearing safety boots in the warehouse and that XPO did not have modified work available so Salat should not be returned to work until fully released from restrictions. Dr. Klop noted Salat's pain complaints were subjective and insufficient to preclude work. The ALJ rejected Dr. Klop's opinion and instead believed Dr. Cooper's testimony about Salat's reduced range of motion, strength, and function. The ALJ also found persuasive Dr. Cooper's IME report and testimony stating he would not have released Salat to return to work.

[¶15] The ALJ also relied on Dr. Cooper's testimony that Salat's ankle injury was unusual and would heal only if he did not put full weight on it. Dr. Cooper testified he would have referred Salat to a specialized center with necessary experts to heal the fracture. The ALJ determined Dr. Klop and Dr. Hart failed to appreciate the significance of Salat's injury and mistakenly concluded he could return to work. The ALJ found the greater weight of evidence showed Salat was entitled to benefits because he could not work and achieve pre-injury earnings.

[¶16] Evidence supports the ALJ's finding Salat had physical limitations precluding his ability to do his job after June 29, 2016. The record allows a finding Salat's condition was mostly unchanged from when Dr. Klop said Salat could not work. On June 20 and 28, 2016, Dr. Klop's worker's compensation (WC) chart stated, "Musculoskeletal: Positive for joint pain, muscle pain, and muscle weakness. Negative for bruises, joint deformity, joint redness, joint stiffness, joint swelling and muscle cramping." The June 20 and 28, 2016 WC charts regarding the thoracic spine are almost identical. For the same dates, the lumbar spine notes show discomfort of transverse processes bilateral but

7

no discomfort on June 28, 2016. On June 20, 2016, Dr. Klop noted she wanted to discuss with Salat discontinuing the boot and crutches and proceeding with no work restrictions. However, Salat's recommended work status remained restricted. The June 20, 2016 WC chart noted "the patient has remained unchanged since the last visit." The last visit with Dr. Klop was June 9, 2016, when the musculoskeletal WC chart comments were similar. On June 9 and 20, 2016, the thoracic spine comment indicates discomfort along T10-T12, while on June 28, 2016, only along T12. Salat's right ankle notes on June 9 are the same as June 20 and 28, 2016. On June 9, 2016, Salat was on work restriction. This evidence supports the ALJ's findings that no significant changes occurred in Salat's condition which supported his work release.

[¶17] The ALJ found Dr. Klop and Dr. Hart failed to appreciate the significance of Salat's ankle injury. That finding is supported by the record. The medical records show Salat had reduced range of motion, strength, function and experienced pain. On the same day Dr. Klop released Salat, she noted Salat reported pain in his joint, weakness of the foot, was using the boot all the time, was using the crutches when not at home because the crutches helped him not put full weight on his foot, his foot felt weak when walking, and he was still icing his foot. Dr. Klop's examination indicated thoracic pain, mild tenderness and tenderness in different areas of the right ankle. The June 27, 2016 MRI taken of Salat's foot was worse than the one taken five weeks post-injury. Dr. Cooper explained the June 27, 2016 MRI showed "an osteochondral defect involving the medial aspect of the talar dome without obvious displacement or disruption of the articular surface. There was a slight increase in the T2 hyperintense fluid signal about the fragment."

[¶18] The ALJ found Dr. Hart's restrictions on July 11, 2016, were incompatible with claimant's work. On July 11, 2016, Dr. Hart determined Salat could participate in *nonimpact* activities and recommended he use an ankle brace. Dr. Klop reviewed Salat's case with Dr. Hart and communicated these findings to Salat on July 15, 2016. Dr. Klop's note stated Dr. Hart was not opposed to regular duty activity. Testimony indicated that operating a standing forklift is "a hard drive," that Salat worked between 40-60 hours a week, and that Salat stood on one foot for an entire day so he could handle the forklift. Dr. Cooper testified he could not recall any place in the record where Dr. Klop indicated her understanding of Salat's work duties. He also testified, "What struck me about his work duties was that he had to stand when he was driving this forklift."

B

[¶19] WSI argues the ALJ improperly used Dr. Cooper's opinion as the basis for determining Dr. Klop and Dr. Hart's full duty release was not well founded. WSI cites N.D.C.C. § 65-05-08.1(d),[2] which states, "A doctor may not certify or verify past disability commencing more than sixty days before the doctor's examination of the employee."

[¶20] Dr. Cooper's statements were within the scope of his independent medical examiner duties. Section 65-05-28, N.D.C.C., outlines examinations of

---

[2] N.D.C.C. § 65-05-08.1 was amended on August 1, 2019. The changes were not substantial. N.D.C.C. § 65-05-08.1(d) became provision "3" and the word "doctor" was amended to "health care provider." The current version states, "3. A health care provider may not certify or verify past disability commencing more than sixty days before the health care provider's examination of the employee." WORKERS' COMPENSATION—HEALTH CARE PROVIDERS, 2019 North Dakota Laws Ch. 523 (S.B. 2184).

9

an injured employee. Section 65-05-28(3) outlines the scope of the IME. In pertinent part the statute states:

> "An independent medical examination and independent medical review must be for the purpose of review of the diagnosis, prognosis, treatment, or fees. An independent medical examination contemplates an actual examination of an injured employee, either in person or remotely if appropriate. An independent medical review contemplates a file review of an injured employee's records, including treatments and testing."

[¶21] At the request of WSI, Dr. Cooper reviewed the medical records for Salat's diagnosis, prognosis and treatment. Dr. Cooper did not certify or verify Salat was disabled on June 28, 2016, or at a later date. Dr. Cooper merely testified he would not have advised Salat to discard his crutches and boot or released him to work on June 28, 2016. He also stated Salat's right ankle was not at pre-injury status. This review for the discontinuation of treatment was within the scope of Dr. Cooper's duties as an independent medical examiner. Therefore, WSI's argument that Dr. Cooper could not render an opinion of Salat's disability before September 12, 2016 fails.

C

[¶22] WSI argues the district court correctly reversed the ALJ's finding because a full duty release is a bar to disability benefits. WSI cites *Welch v. Workforce Safety & Ins.*, 2017 ND 210, ¶ 21, 900 N.W.2d 822, to support this argument. It is true an individual cannot receive disability benefits when they are released to regular duty with no physical limitations and the release is supported by the medical evidence. However, the ALJ found Salat's release to work was not supported by medical evidence.

10

[¶23] In *Welch*, three medical providers released Welch to perform regular work without physical limitations. *Id*. ¶ 20. A functional capacity evaluation (FCE) concluded Welch was limited to "medium work level." *Id*. at ¶ 21. The FCE is an examination done by a doctor and results in a report or doctor's testimony. The ALJ found the FCE was self-limiting and not supported by the medical records. *Id*. at ¶ 20. An "ALJ's evaluation of the FCE's weight and credibility falls within the purview of the ALJ's discretion in making factual determinations." *Id*. at ¶ 21. Here, Dr. Cooper performed an IME and not a FCE. However, just like the ALJ in *Welch*, the ALJ in this case assessed Dr. Cooper's credibility. The ALJ considered Dr. Cooper's opinion regarding Salat's right ankle injury and found it was supported by the greater weight of the evidence. The ALJ is not bound by the treating medical providers' opinions and can consider outside examiner's opinions. *See Bergum v. North Dakota Workforce Safety & Ins.*, 2009 ND 52, ¶ 17, 764 N.W.2d 178 ("This Court has refused to create a presumption that a treating physician's opinion is entitled to greater weight than those of other examining physicians." (citing *Swenson v. Workforce Safety & Ins. Fund*, 2007 ND 149, ¶ 27, 738 N.W.2d 892)).

D

[¶24] WSI argues the ALJ erred in finding the doctors providing Salat's care and the employer failed to communicate about Salat's condition. WSI argues Salat was terminated for violating XPO's "three-day no call/no show" policy and not because of physical limitations related to his injury. These issues are intrinsically connected.

[¶25] After working the entire first day on June 29, and two hours the second day, June 30, 2016, Salat testified he reported to his supervisor that he could not continue working because of pain. He also testified his supervisor told him on the second day he should go home if he was not feeling well. Salat saw Dr. Klop on July 15, 2016, and his understanding was that she was going to talk to his employer. Testimony supports the ALJ's finding Salat did not call in to work on July 11-13, but he did report his pain and inability to work to his supervisor on his last working day. On July 11, 2016, Dr. Hart recommended Salat only participate in nonimpact activities and to wear an ankle brace. Because operating the standing forklift involved impact and Salat could not wear a brace or use crutches at work, the ALJ reasonably found Dr. Hart's restrictions on July 11, 2016, were incompatible with Salat's work duties, and there may have been a failure of communication between the doctors and the employer about Salat's condition. Additionally, Salat only became aware of Dr. Hart and Dr. Klop's conversation regarding the July 11 examination on July 15, 2016, which was the same day he was terminated.

[¶26] Based upon this record, a reasoning mind reasonably could determine the greater weight of the evidence shows because of the work injury the claimant was unable to work and earn as much as he earned at the time of his injury. The ALJ did not err in finding disability benefits should not have been discontinued after June 29, 2016.

V

[¶27] Salat argues the district court erred by reversing the ALJ's finding that Salat is entitled to benefits for his low back condition after November 11, 2016. WSI argues no evidence supports a finding Salat's work injury was a substantial contributing factor to his lumbar spine condition after October 6,

12

2016, or November 11, 2016, and the ALJ inexplicitly determined the thoracic spine pain was a compensable injury. We conclude a reasoning mind could reasonably conclude Salat's work injury was a substantial contributing factor to low back pain after November 11, 2016.

[¶28] A claimant must prove by a preponderance of the evidence he is entitled to benefits. N.D.C.C. § 65-01-11. A compensable injury is "an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings." N.D.C.C. § 65-01-02(11). "[O]bjective medical evidence may include a physician's medical opinion based on an examination, a patient's medical history, and the physician's education and experience." *Swenson v. Workforce Safety & Ins. Fund*, 2007 ND 149, ¶ 25, 738 N.W.2d 892. Once a work-related injury resolves, WSI is under no obligation to provide benefits. *Bjerke v. North Dakota Workers Compensation Bureau*, 1999 ND 180, ¶ 22, 599 N.W.2d 329.

[¶29] A claimant is responsible for supporting their claim. *Davenport v. Workforce Safety & Ins. Fund*, 2013 ND 118, ¶ 18, 833 N.W.2d 500. A claimant also has the burden of establishing a causal relationship between the medical condition and the work injury, and that burden is not satisfied by surmise, conjecture, or mere guess. *Rush v. North Dakota Workers Compensation Bureau*, 2002 ND 129, ¶ 8, 649 N.W.2d 207 (citing *Wherry v. North Dakota State Hosp.*, 498 N.W.2d 136, 141 (N.D. 1993)).

[¶30] The ALJ found Salat suffered low back pain related to his antalgic gait after November 11, 2016. The ALJ concluded Salat had back pain from the injury itself, and continued to experience back pain and spasms in relation to his antalgic gait. The ALJ also found as late as May 19, 2017, Salat complained of low back pain, was noted to have an antalgic gait, and upon examination

13

had palpable back spasms. The ALJ found the record was clear Salat had low back muscular pain resulting from his antalgic gait caused by the work injury, whether it was attributed to L1 or T12. The district court reversed.

[¶31] Part of the record is Dr. Klop's March 23, 2016 note, "I feel his back discomfort is musculoskeletal secondary to his gait from his foot." In Dr. Cooper's report he opined the right ankle pain was diagnosable as an unhealed osteochondral lesion of the talus. He stated this was confirmed by the presence of "anterior ankle tenderness with the foot plantar flexed, decreased passive ankle range of motion, an *antalgic gait*, and worsening of the MRI findings four months post-injury compared with five weeks post-injury." (Emphasis added.) On May 19, 2017, physician assistant Seil noted, "[a]ntalgic gait due to right foot/ankle pain."

[¶32] The record supports the ALJ's finding Salat suffered low back pain related to his antalgic gait. Throughout Salat's care medical professionals connected the back pain to the antalgic gait. On March 23, 2016, Dr. Klop noted, "He will remain on work restrictions. I feel his back discomfort is musculoskeletal *secondary to his gait* from his foot and does not require imaging." (Emphasis added.) The March 31 and April 6, 2016 records indicate Salat's back pain "resolved." However, the record shows back pain from the antalgic gait continued or reemerged after that date.

[¶33] On May 26, 2016, physical therapist Judah stated, "I think most of his pain is muscular and judging by his weight shifting away from his right leg[,] I think this is the most likely cause of his return of back pain." On May 27, 2016, Dr. Klop stated, "[a]ssessment has been mechanical low back pain secondary to fall and dysfunctional gait with right foot injury." On June 9, 2016, Dr. Klop noted, "[m]echanical low back pain secondary to fall and

14

dysfunctional gait with right foot injury—continue chiropractic treatment and PT." On June 20, 2016, Dr. Klop noted, "[w]ithout the walking boot and crutches, he walks with a limp, his upper body is side bent to compensate his gait and he does not bear full weight on RLE." On the same day she noted, "I still feel his thoracolumbar back pain is mechanical secondary to the fall and his dysfunctional gait with the right foot injury. This should resolve as his gait returns to normal and he discontinues use of boot and crutches."

[¶34] On June 30, 2016, Dr. Seamands, the chiropractor, noted "[s]lowly improving and a bit recalcitrant due to the fact that he is still in his boot, causing him to walk with an antalgic gait. Now that he is out of the boot, he is working at full-duty. This has caused a bit of a flare. He has increased back pain, without significant or lasting improvement." On July 5, 2016, Dr. Klop noted, "The patient walks with a limp, his upper body is side bent to compensate his gait and he does not bear full weight on RLE." She also stated, "I explained that I strongly feel his back pain is musculoskeletal secondary to his abnormal gait from his foot and from use of the crutches. His gait continues to be abnormal and he returned to work which resulted in him performing more physical duty than he has been so it is not unexpected that his back now feels worse." On July 21, 2016, Dr. Jati, in neurology noted under the "Review of Systems" section, "Musculoskeletal: Positive for back pain and gait problem."

[¶35] The record shows Salat experienced an antalgic gait and continued to have back pain after November 11, 2016. In Dr. Cooper's report he noted Salat "ambulates with an antalgic gait on the right and reports pain with thoracolumbar range of motion." Although Dr. Cooper opined Salat's current low back pain was not from the work injury, he noted Salat had "continued low back pain" and a "current low back condition." On May 19, 2017, physician

15

assistant Seil noted, "[p]ain to palpation at the bilateral paraspinal musculature at T10-T12. No lower back pain with palpation. Negative SLR. Antalgic gait due to right foot/ankle pain." On June 23, 2017, Dr. Hart noted, "gait is stable, propulsive, and minimally asymmetric with only slight favoring of the right ankle when observed walking." In the same report Dr. Hart notes, "[h]istory of back pain which is currently improved per his report."

[¶36] The district court concluded the ALJ "manufactured a dispute of medical opinion between Dr. Cooper and Dr. Klop" and reversed because "a reasoning mind could not reasonably conclude that Dr. Cooper and Dr. Klop had conflicting medical opinions." We disagree.

[¶37] The ALJ analyzed Dr. Cooper and Dr. Klop's conflicting medical opinions under N.D.C.C. § 65-05-08.3, which states:

> "1. A presumption may not be established in favor of any health care provider's opinion. The organization shall resolve conflicting medical opinions and in doing so the organization shall consider the following factors:
> a. The length of the treatment relationship and the frequency of examinations;
> b. The nature and extent of the treatment relationship;
> c. The amount of relevant evidence in support of the opinion;
> d. How consistent the opinion is with the record as a whole;
> e. Appearance of bias;
> f. Whether the health care provider specializes in the medical issues related to the opinion; and
> g. Other relevant factors."

[¶38] Dr. Cooper diagnosed Salat's continued back pain as caused by hypermobility syndrome. He opined the back strain involving the L1-L2 level resulting from the February 22, 2016 work incident was resolved within three to six weeks of the incident so that Salat's low back pain on the date of the IME

16

was unrelated to the work injury. Dr. Klop did not diagnose Salat with hypermobility syndrome but continually diagnosed Salat's back pain from his antalgic gait. Dr. Klop stated she did not have "any objective findings on physical exam to challenge or disagree" with Dr. Cooper. However, the district court apparently misunderstood Dr. Klop's statement as a blanket agreement. Dr. Klop's statement does not mean she agrees with everything Dr. Cooper opined. This is evident where she clearly disagreed with Dr. Cooper's opinion that Salat was not ready to return to work on June 29, 2016. Rather, Dr. Klop's statement is better understood as stating she had no objective findings on physical exam to challenge or disagree with Dr. Cooper's opinion regarding the source of Salat's back pain. Nor did Dr. Klop have objective findings to challenge Dr. Cooper's opinion Salat has hypermobility syndrome because this syndrome was not diagnosed prior to the IME. The record indicates Salat experienced continued back pain which was derived from the antalgic gait after the three to six week mark. On this record, the ALJ could reasonably find Dr. Klop and Dr. Cooper had conflicting medical opinions on the source of the continued back pain, and that even if Salat had hypermobility syndrome it does not mean he did not also suffer intermittent muscular low back pain related to his gait.

[¶39] Based upon the record, a reasoning mind reasonably could determine Salat suffered low back pain after November 11, 2016, that was attributable to the compensable work injury.

17

## VI

[¶40] We reverse the district court judgment and reinstate the ALJ's May 11, 2018 order.

[¶41] Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Jon J. Jensen
Gerald W. VandeWalle, C.J.