# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 152

B.C., by and through his
parent Michelle Cox,                                                     Appellant

  v.

North Dakota Department
of Human Services,                                                        Appellee

### No. 20220100

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Pamela A. Nesvig, Judge.

REVERSED.

Opinion of the Court by VandeWalle, Justice.

Mandy R. Dendy, Bismarck, ND, for appellant.

Jane G. Sportiello, Assistant Attorney General, Bismarck, ND, for appellee.

**VandeWalle, Justice.**

[¶1]   B.C., by and through his parent Michelle Cox, appealed from a district court judgment affirming the Department of Human Services ("Department") decision to deny autism voucher program funding for a gazebo. B.C. argues the Department's rationale for rejecting the Administrative Law Judge's (ALJ) recommendation is insufficient, its interpretation of its regulation is unreasonable, and its conclusions of law are not supported by its findings of fact. We conclude the agency unreasonably interpreted the regulation and its conclusions of law are not supported by its findings of facts. We reverse the judgment of the district court affirming the Department's denial of the autism voucher program funding for the gazebo.

I

[¶2]   B.C. is a child who participates in the autism spectrum voucher program. Cox, on behalf of B.C., requested, among other things, a garden gazebo and outdoor misting system through the program. In support of his request, B.C.'s therapist submitted a letter explaining that B.C. has issues with regulating body temperature and overheats easily due to his autism. The letter explained that B.C. has an extreme fear of flying insects. The therapist recommended the gazebo with mosquito netting and a misting hose to enable him to spend time outdoors without overheating. The Department denied the request for the gazebo reasoning that voucher funds may not be used for items or services that are a parental responsibility and that the Department viewed a gazebo the same as a fence. The Department approved the outdoor misting system.

[¶3]   B.C. appealed the denial to the ALJ and a hearing was held. B.C.'s therapist testified that she has diagnosed B.C. with generalized anxiety and autism spectrum disorder. The therapist explained that the gazebo would allow B.C. to spend time outside and the netting would help address his phobia of flying insects.

[¶4]   Cox testified that the gazebo requested was not a permanent gazebo that would be fixed to the property. She explained that she rents her current home and she did not intend to leave the gazebo but would take it with her if she moved.

[¶5]   The State Autism Coordinator testified that the Department denied the gazebo because it was an item viewed as a parental responsibility. The Coordinator explained that the Department views the gazebo the same as a fence, meaning that it's the parents' responsibility to have items within their home that add improvement. The Coordinator stated "a fence is an improvement. A fence is around the house, part of the house, and so, therefore, the gazebo would be seen as the same thing as being part of the house, not just for the child." The Coordinator testified that the misting system was approved because it was unique to B.C. and that not everybody needs a misting system, therefore, B.C. actually needs the system to regulate his temperature. The Coordinator stated that the gazebo was a home improvement because it could be used by the whole family, was not tied specifically to an autism diagnosis, and was tied to the fact that it is an enhancement to the environment.

[¶6]   The ALJ issued findings of fact and conclusions of law for the Department to consider. The ALJ determined it was improper for the Department to deny the gazebo on the grounds that it was equivalent to a fence without additional explanation because such a practice would cause the appearance of being disingenuous and create a motive for applicants to appeal. The ALJ also stated that the Department's rule does not define parental responsibility and that it did not know what parental responsibility meant because it had not been adequately explained. The ALJ found that parental responsibilities are what the autism voucher program will not pay for because the items or services do not address a deficit created by the autism disorder. The ALJ determined the gazebo should be covered because the gazebo compensates for B.C.'s particular deficits created by his autism spectrum disorder by providing for his safety and treatment.

[¶7]   The Department adopted in part and rejected in part the ALJ's recommendation. The Department determined that its decision to deny the

autism voucher request for the gazebo was proper. The Department's final order provides that "[i]t is more likely than not that the gazebo would allow [B.C.] to safely be outside and would compensate for two of [B.C.]'s major deficits: temperature regulation and phobia of flying insects. Both of the deficits are created by his autism spectrum disorder." The Department concluded that it denied the gazebo because the requested item was a parental responsibility. The Department likened a gazebo to a fence because both are home improvements and both are additions to property for convenience rather than necessity.

[¶8]   B.C. appealed the Department's decision to the district court. The district court affirmed the Department's decision.

II

[¶9]   When an administrative agency's decision is appealed from the district court, this Court reviews the agency's decision and the record before the agency in the same manner as the district court reviewed the decision. *Bleick v. N.D. Dep't of Human Servs.*, 2015 ND 63, ¶ 10, 861 N.W.2d 138. This Court will affirm an agency's decision unless:

> 1. The order is not in accordance with the law.
> 2. The order is in violation of the constitutional rights of the appellant.
> 3. The provisions of this chapter have not been complied with in the proceedings before the agency.
> 4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
> 5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
> 6. The conclusions of law and order of the agency are not supported by its findings of fact.
> 7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
> 8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46. "In reviewing the agency's findings of fact, we do not make independent findings or substitute our judgment for the agency's judgment." *Sloan v. N.D. Workforce Safety & Ins.*, 2011 ND 194, ¶ 5, 804 N.W.2d 184. This Court instead decides "whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record." *Id.* "Questions of law, including statutory interpretation, are fully reviewable on appeal." *Id.*

## III

[¶10] B.C. argues the Department's rationale for rejecting the ALJ's recommendation is insufficient, its interpretation of its regulation is unreasonable, and its conclusions of law are not supported by its findings of fact.

[¶11] This Court interprets regulations in the same manner as statutes:

> Administrative regulations are derivatives of statutes and are construed under rules of statutory construction. Statutory interpretation is a question of law, fully reviewable on appeal. The objective in interpreting regulations is to determine the drafter's intent by first looking at the language itself. Words are given their plain, ordinary, and commonly understood meaning, unless defined or unless a contrary intent plainly appears. Regulations are construed as a whole and are harmonized to give meaning to related provisions. If the relevant language is clear and unambiguous, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

*Blue Appaloosa, Inc. v. N.D. Indus. Comm'n*, 2022 ND 119, ¶ 8, 975 N.W.2d 578 (quoting *Gadeco, LLC v. Indus. Comm'n*, 2013 ND 72, ¶ 10, 830 N.W.2d 535). "An administrative agency's reasonable interpretation of a regulation is entitled to deference, and an agency's decision in complex or technical matters involving agency expertise is entitled to appreciable deference." *Ennis v. N.D. Dep't of Human Servs.*, 2012 ND 185, ¶ 7, 820 N.W.2d 714 (citations and quotations omitted).

[¶12] The Department argues it reasonably interpreted the word "parental responsibilities" to include a gazebo and its interpretation of its administrative rule is entitled to deference.

[¶13] The Department is tasked with establishing a voucher program "to assist in funding equipment and general educational needs related to autism spectrum disorder" for individuals meeting certain requirements. N.D.C.C. § 50-06-32.1(1). The Department must adopt rules addressing management and establish eligibility requirements and exclusions for the autism spectrum disorder voucher program. *Id.* § 50-06-32.1(2). The rules governing the autism spectrum disorder voucher program are governed by N.D. Admin. Code ch. 75-03-38.

[¶14] At the time the Department issued its decision, section 75-03-38-04(7), N.D.A.C.,[1] provided that voucher funds may not be used for:

> a. Items or services that are parental responsibilities, including daily clothing, upkeep of residence, fences, internet, or utilities.
> b. Duplicate items or services that address identical deficit goals, except for disposable items;
> c. Items or services that are not age appropriate;
> d. Items or services that are not connected to the child;
> e. Items or services covered by insurance;
> f. Items or services if the voucher is terminated;
> g. Items or services that put the health and safety of the child at risk;
> h. Replacement items, except for disposable products, such as sensory or tactile stimulation items;
> i. Items that are restricted within property rental agreements or are the responsibility of landlords, tenants, or the homeowner;
> j. Items that would cause a parent, custodian, or legal guardian to have additional or recurring costs; and
> k. Service animals or emotional support animals and related items.

---

[1] Section 75-03-38-04(7) of the North Dakota Administrative Code has since been amended in respects not relevant to our discussion. The amendments became effective January 1, 2022.

[¶15] The Department denied B.C.'s request for the gazebo, stating:

> 75-03-38-04(7a) The voucher funds may not be used for (a) items or services that are parental responsibilities, including daily clothing, upkeep of residence, fences, internet, or utilities.

> • The Department views a gazebo the same as a fence.

The term "parental responsibility" is not defined in the administrative rules. "The ordinary sense of the word 'including' is that it is not a word of limitation, but of enlargement." *Peterson v. McKenzie Cty. Pub. Sch. Dist. No. 1*, 467 N.W.2d 456, 459 (N.D. 1991). Thus, "parental responsibility" is not limited to daily clothing, upkeep of residence, fences, internet, and utilities. The ordinary meaning of "fence" is "a barrier intended to prevent escape or intrusion or to mark a boundary." *Merriam-Webster's Collegiate Dictionary* 461 (11th ed. 2005).

[¶16] Here, the Department denied the gazebo because it was a parental responsibility. The Department likened a gazebo to a fence because both are home improvements and both are additions to property for convenience rather than necessity. However, this conclusion is not supported by its findings of fact. The Department's final order states "[i]t is more likely than not that the gazebo would allow [B.C.] to safely be outside and would compensate for two of [B.C.]'s major deficits: temperature regulation and phobia of flying insects. Both of the deficits are created by his autism spectrum disorder." There are no findings of fact which indicate that the gazebo requested by B.C. is a home improvement for convenience. Rather, the gazebo requested was recommended because of B.C.'s issue with regulating body temperature and his extreme fear of flying insects. At the hearing before the ALJ, the State Autism Coordinator testified that "a fence is an improvement. A fence is around the house, part of the house, and so, therefore, the gazebo would be seen as the same thing as being part of the house, not just for the child." The Coordinator stated that it was a home improvement because it could be used by the whole family, was not tied specifically to an autism diagnosis, and was tied to the fact that it is an enhancement to the environment. The Department concedes at oral argument that the outdoor misting system, which was approved, is large enough to be

hung on a structure for more than one person. To uphold the Department's interpretation of parental responsibility would lead to inconsistent results.

[¶17] In this case, it would be unreasonable to interpret "parental responsibility" as broadly as suggested by the Department. The Department's interpretation that "a gazebo" is like "a fence" because "both are home improvements" and thus excluded as a parental responsibility, was unreasonable. The administrative regulation is not complex or technical in nature, therefore we do not give the agency's interpretation appreciable deference. It is appropriate and unremarkable for the Department to draw a parallel between the ordinary meaning of "gazebo" and "fence" to determine if a requested item is within the scope of the exclusion. The prototypical gazebo, like the prototypical fence, is a "home improvement" or an "addition[] to property." But whether a generic or typical gazebo is similar to a generic or typical fence is not the proper question because that fails to apply the administrative rule to the particular item referred to here as a "gazebo." The actual item requested for B.C. was described on the autism voucher purchase request as "Apex Garden Harmony 10'x10' Gazebo," available at a big box home improvement store for $438.96. The attached printout of the listing on the store's web site shows that the "gazebo" is a square canopy supported by a steel leg at each corner. As depicted, it is unmistakably a member of the class of temporary shade structures one often sees at high-school sporting events and outdoor exhibition booths. Without the word temporary or pop-up in front of it, the word gazebo as applied to this item is simply marketing. The Department must measure the specific item requested against the ordinary meaning of "parental responsibility" in its administrative rule. There is no evidence in this record that the gazebo is a fence when construed within the meaning of "parental responsibility." We conclude the agency unreasonably interpreted the regulation and its conclusions of law are not supported by its findings of facts.

IV

[¶18] The judgment of the district court affirming the Department's denial of the autism voucher program funding for the gazebo is reversed.

7

[¶19]   Jon J. Jensen, C.J.
        Gerald W. VandeWalle
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte